Docusign Envelope ID: E23F859A-3159-83A1-81E6-5B9505DC8FE9

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLORADO**

Civil Action No. 1:26-cv-01707-KAS

KOSHER EATS LLC,
EMERALD CONSULTING PARTNERS LLC,
ABBSON LLC,
MSC COMPANIES, LLC, and
HOMEPEOPLE CORPORATION,

      Plaintiffs,

vs.

MESSNER REEVES LLP,
DANIEL CHARTRAW,
TODD OWEN, and
CLEARWATER PREMIERE PERPETUAL MASTER LLC,

      Defendants.

---

**DECLARATION OF JONATHAN FODERA**

---

I, Jonathan Fodera, declare as follows:

1.     I have personal knowledge of the matters stated in this declaration and would testify competently to them in court.

2.     I submit this declaration in support of Plaintiffs' motion for preliminary injunction and motion for prejudgment writ of attachment.

3.     I am the President and Chief Executive Officer of Plaintiff Emerald Consulting Partners LLC.

Docusign Envelope ID: E23F859A-3159-83A1-81E6-5B9505DC8FE9

## Emerald and the BELOC

4. Emerald provides specialized financial advisory and consulting services to small businesses focused on capitalization and long-term growth. The company was formed in 2023 as a collaboration among me and my business partners.

5. One of Emerald's clients was Hard AF Seltzer, LLC, which sought financing and received a BELOC drafted by Messner on behalf of INBE.

6. The BELOC provided that Hard AF would receive a $2,800,000 loan from INBE on favorable terms within 90 days, provided that a 25 percent deposit of $700,000 was placed with Messner.

7. The BELOC also stated that if the loan was not funded within 90 days after the deposit was placed with Messner, the $700,000 ICA deposit would be returned.

8. The BELOC and FAQ contained representations about the safety of the deposit. The documents stated that the ICA deposit would remain in the Trustee's sole possession and control, that the funds would be held by a nominated Trustee attorney, that the funds would remain with the Trustee until the loan was delivered, that the money would be fully insured, and that the borrower would not be exposed to risk of loss.

9. I understood that the loan might not fund. I did not understand that the deposit itself could be transferred away before funding. I would not have authorized that risk.

10. Emerald proceeded only after researching Messner. I believed the escrow deposit would be safe in the sole possession and control of a large law firm's trust account. If the loan did not fund, Emerald would receive the escrow deposit back.

11. I specifically relied on representations on Messner's website reflecting a large national firm with over 100 attorneys, more than 70 partners, and 10 offices across the country.

Docusign Envelope ID: E23F859A-3159-83A1-81E6-5B9505DC8FE9

12.    Messner's status as a national law firm was a critical and dispositive factor in my decision to proceed.

13.    Had I known that Daniel Chartraw was involved in the BELOC transaction in any capacity, Emerald would not have entered into the transaction or deposited any money with Messner. I would not have approved the transaction if I had known that Chartraw was involved, whether directly, through Clearwater, or through any other person or entity.

14.    Emerald agreed to serve as Bridge Lender in the BELOC transaction involving Hard AF. The parties executed a side letter on June 12, 2023, which provided that the Deposit shall be immediately paid to the Bridge Lender if the LOC was not funded within 90 days after the Bridge Lender's deposit with INBE.

15.    On June 12, 2023, Emerald wired $700,000 to Messner's Northern Trust escrow account. On June 13, 2023, Torben Welch confirmed receipt by text message.

16.    On September 11, 2023, the 90-day deadline expired. No loan proceeds were issued. Emerald received no refund.

### Demands for return and Messner's responses

17.    On September 21, 2023, Welch texted me that he had not heard anything concrete, that he was dependent on information from INBE, and that he would let me know when he had an update. I later learned that INBE swore it never received any Plaintiffs' money.

18.    On October 27, 2023, on behalf of Emerald, I formally requested immediate return of the deposit funds from Welch in writing.

19.    In response, Welch stated that Messner was merely a paymaster and would inform INBE of the request for the deposit's return.

3

Docusign Envelope ID: E23F859A-3159-83A1-81E6-5B9505DC8FE9

20. On October 27, 2023, my business partner, Saleem Elmasri, raised concerns with Messner, Welch, and Jim Smith that $8.7 million in escrow funds had seemingly disappeared.

21. On October 30, 2023, I emailed Welch and stated that we were done chasing answers and needed clear and accurate communication about the whereabouts of our interest reserve funds.

22. We received no substantive response.

23. On November 21, 2023, after retaining counsel, Emerald sent a formal demand to Welch and Messner for return of Emerald's escrowed funds by December 1, 2023.

24. Messner requested a notarized termination letter for the BELOC, which Emerald provided. Even after Emerald provided the notarized termination letter, Messner refused to return Emerald's $700,000 deposit.

25. On February 22, 2024, in response to Emerald's California lawsuit, Messner publicly stated that the funds had not disappeared or become lost and that legal requirements for return of the funds had not been satisfied. Messner did not identify those legal requirements. Emerald still has not received the money.

### No authorization and no accounting

26. I never authorized Messner to transfer $700,000 to Chartraw, Clearwater, Sahara Las Vegas Corp., Owen, Dribble Dunk, Construction Testing Services, Harris Bank, any of those parties' creditors or attorneys, car dealerships, loan repayments, Titan Financial, or any other person or entity. I authorized only the deposit into Messner's trust account under the BELOC terms.

27. Emerald had a direct contractual right under the Bridge Lender side letter to return of the $700,000 deposit if the LOC was not funded within 90 days.

4

Docusign Envelope ID: E23F859A-3159-83A1-81E6-5B9505DC8FE9

28.     Messner has repeatedly refused to provide an accounting or credible explanation for the location of Emerald's $700,000 deposit.

29.     I have not received any accounting identifying where $700,000 went, who received it, why it was transferred, what authority supposedly allowed the transfer, or where any traceable proceeds are now located.

30.     I have requested and demanded the return of Emerald's ICA deposit from Messner numerous times, both directly and through counsel, including on June 4, 2026, through a communication sent to Messner's counsel at Gordon Rees and directed to Messner's highest-ranking personnel, including its President, Chief Executive Officer, Chief Operating Officer, and five managing partners. In response, my understanding is that Messner replied through counsel on June 9, 2026, disputing that it was obligated to provide an accounting to me as a non-client depositor. I also understand that INBE, Messner's former client, asked Messner for an accounting and Messner refused.

31.     Had I known Messner would transfer Emerald's deposit away before funding, Emerald would not have entered the transaction.

### Irreparable harm

32.     As a result of Messner's conduct, Emerald's business suffered severe damage.

33.     Emerald's reputation and credibility in the financial sector have been harmed.

34.     Industry partners, referral sources, and investors have distanced themselves from Emerald.

35.     Emerald has been unable to attract new clients since the misappropriation.

36.     The removal of $700,000 in working capital prevented Emerald from expanding or pivoting to new markets.

5

Docusign Envelope ID: E23F859A-3159-83A1-81E6-5B9505DC8FE9

37.     The reputational damage has harmed Emerald's owners' affiliated businesses.

38.     Emerald is on the brink of collapse.

39.     The harm to Emerald has grown progressively worse since Messner failed to return the escrow funds. If the missing escrow funds entrusted to Messner are not returned, that circumstance will likely cause Emerald to fail. The harm is imminent and irreparable in nature.

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.


Executed on  6/24/2026


By:  _____
     Jonathan Fodera
     President, Emerald Consulting Partners LLC

6