Docusign Envelope ID: 889E03C4-0D47-8271-80CB-6816985E5A94

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLORADO**

Civil Action No. 1:26-cv-01707-KAS

KOSHER EATS LLC,
EMERALD CONSULTING PARTNERS LLC,
ABBSON LLC,
MSC COMPANIES, LLC, and
HOMEPEOPLE CORPORATION,

      Plaintiffs,

vs.

MESSNER REEVES LLP,
DANIEL CHARTRAW,
TODD OWEN, and
CLEARWATER PREMIERE PERPETUAL MASTER LLC,

      Defendants.

---

**DECLARATION OF CHAD ABBOTT**

---

I, Chad Abbott, declare as follows:

1.     I have personal knowledge of the matters stated in this declaration and would testify competently to them in court.

2.     I submit this declaration in support of Plaintiffs' motion for preliminary injunction and motion for prejudgment writ of attachment.

3.     I am the Chief Executive Officer of Plaintiff Abbson LLC.

**Abbson and the BELOC**

4.     Founded in 2013, Abbson is a full-service digital marketing and content creation company that provides podcast production, live event production, and advertising services.

Docusign Envelope ID: 889E03C4-0D47-8271-80CB-6816985E5A94

5.      As of early 2023, Abbson was a successful and rapidly growing company with operations in New York City, Los Angeles, and Washington, D.C. Abbson had 25 full-time employees, nearly 50 independent contractors, more than 25 regular clients, and revenues that had nearly doubled between 2020 and 2022.

6.      On June 29, 2023, on behalf of Abbson, I signed a BELOC under which Abbson was to receive a $14,000,000 loan at 6 percent interest, with interest-only payments for ten years, and without a personal guarantee or real estate collateral.

7.      The BELOC required Abbson to deposit $3,500,000 into escrow with Messner before the loan would be issued.

8.      Although INBE was unknown to me, I felt comfortable proceeding because the escrow holder was Messner, a national law firm with over 100 attorneys, more than 70 partners, and 10 offices across the country, according to the firm website I reviewed before proceeding.

9.      Messner's size, reputation, and law-firm trust account were critical and dispositive factors in my decision to proceed. Abbson would not have transferred $3,500,000 without Messner's role as the trust-account holder.

10.     Had I known that Daniel Chartraw was involved in the BELOC transaction in any capacity, Abbson would not have entered into the transaction or deposited any money with Messner. I would not have approved the transaction if I had known that Chartraw was involved, whether directly, through Clearwater, or through any other person or entity.

11.     The BELOC and FAQ contained representations about the safety of the deposit. The documents stated that the ICA deposit would remain in the Trustee's sole possession and control, that the funds would be held by a nominated Trustee attorney, that the funds would remain

Docusign Envelope ID: 889E03C4-0D47-8271-80CB-6816985E5A94

with the Trustee until the loan was delivered, that the money would be fully insured, and that the borrower would not be exposed to risk of loss.

12.     I understood that the loan might not fund. I did not understand that the deposit itself could be transferred away before funding. I would not have authorized that risk.

13.     On June 29, 2023, Abbson wired $3,500,000 to Messner's Northern Trust COLTAF trust account.

14.     The BELOC loan never funded. The ninety-day deadline expired on September 27, 2023. Abbson received no loan proceeds and no refund.

### No authorization and no accounting

15.     I never authorized Messner to transfer $3,500,000 to Chartraw, Clearwater, Sahara Las Vegas Corp., Owen, Dribble Dunk, Construction Testing Services, Harris Bank, any of those parties' creditors or attorneys, car dealerships, loan repayments, Titan Financial, or any other person or entity. I authorized only the deposit into Messner's trust account under the BELOC terms.

16.     No one told me before the deposit that Abbson's escrow money could be transferred to Clearwater, Dribble Dunk, Titan Financial, or anyone else before loan funding.

17.     On December 15, 2023, a Messner-related representative claimed that funds would be released through Clearwater. I had never authorized Clearwater to hold or control Abbson's deposit.

18.     To this day, Messner has not returned Abbson's $3,500,000 escrow deposit.

19.     I have not received any accounting identifying where $3,500,000 went, who received it, why it was transferred, what authority supposedly allowed the transfer, or where any traceable proceeds are now located.

Docusign Envelope ID: 889E03C4-0D47-8271-80CB-6816985E5A94

20. I have requested and demanded the return of Abbson's ICA deposit from Messner numerous times, both directly and through counsel, including on June 5, 2026, through a communication sent to Messner's counsel at Gordon Rees and directed to Messner's highest-ranking personnel, including its President, Chief Executive Officer, Chief Operating Officer, and five managing partners. In response, my understanding is that Messner replied through counsel on June 9, 2026, disputing that it was obligated to provide an accounting to me as a non-client depositor. I also understand from counsel that INBE, Messner's former client, asked Messner for an accounting and Messner refused.

21. Had I known Messner would transfer Abbson's deposit away before funding, Abbson would not have entered the transaction.

### Irreparable harm

22. The loss of Abbson's $3,500,000 escrow deposit had catastrophic consequences.

23. Abbson was forced to lay off its entire workforce, including more than 25 employees and more than 50 independent contractors.

24. Abbson defaulted on office lease obligations in New York, Los Angeles, and Washington, D.C.

25. Abbson abandoned its planned expansion, including a production studio in Washington, D.C.

26. Abbson is now non-operational, cannot meet financial obligations, and faces multiple creditor lawsuits.

27. Abbson's reputation and standing in the marketing industry have been severely damaged, and key client relationships have been severed.

28.    Abbson is on the brink of insolvency and faces mounting financial pressure. Without court intervention, Abbson will suffer additional irreparable harm.

29.    The harm to Abbson has grown progressively worse as the time passed since Messner failed to return the escrow funds. If the missing escrow funds entrusted to Messner are not returned, that circumstance will likely cause Abbson to fail permanently. The harm is imminent and irreparable in nature.

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.


Executed on 6/24/2026

By: Chad Abbott
EAA1235ABD1F4DD...
Chad Abbott
CEO, Abbson LLC

5