Docusign Envelope ID: FC85F4E0-B909-8308-8320-8550B744F3A3

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLORADO**

Civil Action No. 1:26-cv-01707-KAS

KOSHER EATS LLC,
EMERALD CONSULTING PARTNERS LLC,
ABBSON LLC,
MSC COMPANIES, LLC, and
HOMEPEOPLE CORPORATION,

      Plaintiffs,

vs.

MESSNER REEVES LLP,
DANIEL CHARTRAW,
TODD OWEN, and
CLEARWATER PREMIERE PERPETUAL MASTER LLC,

      Defendants.

---

**DECLARATION OF NIMESH CHAUDHARI**

---

I, Nimesh Chaudhari, declare as follows:

1.     I have personal knowledge of the matters stated in this declaration and would testify competently to them in court.

2.     I submit this declaration in support of Plaintiffs' motion for preliminary injunction and motion for prejudgment writ of attachment.

3.     I am the sole member and Chief Executive Officer of Plaintiff MSC Companies, LLC.

Docusign Envelope ID: FC85F4E0-B909-8308-8320-8550B744F3A3

## MSC and the BELOC

4.      MSC is a Utah-based hospitality consulting, development, and management group that operates multiple hotels through related LLCs. MSC provides staffing, operations management, revenue management, sales, reporting, and in-house accounting for franchise hotels.

5.      My family has been in the hospitality industry for decades. I became involved in MSC to structure it as a cohesive management and investment entity focused on expanding and optimizing hospitality assets.

6.      MSC primarily franchises hotels under major brands such as Hilton and Marriott. At its peak, MSC operated in Utah, Wyoming, Nebraska, North Dakota, South Dakota, Indiana, Illinois, and Texas.

7.      As of early 2023, MSC had consolidated its operations to 27 properties across Utah, Wyoming, and Nebraska and employed between 750 and 900 employees across its properties.

8.      To obtain expansion financing of $4,580,000, I signed a BELOC requiring MSC to deposit $1,145,000 into escrow with Messner before receiving the loan.

9.      I understood there was a risk the BELOC loan might not fund, given the unusual nature of the terms. I had no reason to believe there was any risk to MSC's escrow deposit, which was supposed to remain safeguarded in the trust account of Messner, a national law firm with over 100 attorneys, more than 70 partners, and 10 offices across the country.

10.     Messner's status as an ostensibly respected law firm was a critical factor in my decision to transfer $1,145,000 into escrow. MSC would not have transferred $1,145,000 without the condition that the funds remained in Messner's sole possession and control.

11.     Had I known that Daniel Chartraw was involved in the BELOC transaction in any capacity, MSC would not have entered into the transaction or deposited any money with Messner.

2

Docusign Envelope ID: FC85F4E0-B909-8308-8320-8550B744F3A3

I would not have approved the transaction if I had known that Chartraw was involved, whether directly, through Clearwater, or through any other person or entity.

12.     The BELOC and FAQ contained representations about the safety of the deposit. The documents stated that the ICA deposit would remain in the Trustee's sole possession and control, that the funds would be held by a nominated Trustee attorney, that the funds would remain with the Trustee until the loan was delivered, that the money would be fully insured, and that the borrower would not be exposed to risk of loss.

13.     I understood that the loan might not fund. I did not understand that the deposit itself could be transferred away before funding. I would not have authorized that risk.

14.     Before proceeding, MSC researched Messner and confirmed that its website described it as a large firm with over 100 attorneys, more than 70 partners, and 10 offices across the country.

15.     On June 22 and June 23, 2023, relying on these representations, MSC wired a total of $1,145,000 to Messner.

16.     The loan never funded. MSC received no loan proceeds and no refund.

### No authorization and no accounting

17.     I never authorized Messner to transfer $1,145,000 to Chartraw, Clearwater, Sahara Las Vegas Corp., Owen, Dribble Dunk, Construction Testing Services, Harris Bank, any of those parties' creditors or attorneys, car dealerships, loan repayments, Titan Financial, or any other person or entity. I authorized only the deposit into Messner's trust account under the BELOC terms.

18.     Before receiving MSC's funds, Messner and its agents were highly responsive. After receiving the deposit, communications slowed and then ceased entirely.

3

Docusign Envelope ID: FC85F4E0-B909-8308-8320-8550B744F3A3

19. I personally attempted to contact representatives of Messner, but they provided vague explanations and misleading statements about alleged funding delays.

20. I never spoke directly to Torben Welch, but I communicated with Jason Aufdermaur, who repeatedly assured me the loan was in process and advised me to remain patient.

21. Despite multiple requests, MSC's escrow deposit has never been returned.

22. I have not received any accounting identifying where $1,145,000 went, who received it, why it was transferred, what authority supposedly allowed the transfer, or where any traceable proceeds are now located.

23. I have requested and demanded the return of MSC's ICA deposit from Messner numerous times, both directly and through counsel, including on June 4, 2026, through a communication sent to Messner's counsel at Gordon Rees and directed to Messner's highest-ranking personnel, including its President, Chief Executive Officer, Chief Operating Officer, and five managing partners. In response, my understanding is that Messner replied through counsel on June 9, 2026, disputing that it was obligated to provide an accounting to me as a non-client depositor. I also understand from counsel that INBE, Messner's former client, asked Messner for an accounting and Messner refused.

24. Had I known Messner would transfer MSC's deposit away before funding, MSC would not have entered the transaction.

### Irreparable harm

25. MSC has suffered severe financial and reputational harm due to Messner's conduct.

26. The loss of MSC's escrowed funds forced MSC to obtain an expensive hard money loan, later refinanced into an even more costly bridge loan.

4

Docusign Envelope ID: FC85F4E0-B909-8308-8320-8550B744F3A3

27.    These emergency funding measures cost MSC more than $1,000,000 in additional financing expenses that would have been avoidable if the escrow deposit had been returned.

28.    MSC's business model relies on trust and financial reliability in the hospitality sector. The inability to recover the escrow funds has severely damaged MSC's credibility with financial partners, investors, and lending institutions.

29.    MSC was forced to walk away from two significant investment opportunities, losing substantial growth potential.

30.    MSC had to bring in new partners to compensate for the capital loss, significantly diluting its equity stakes in current deals.

31.    MSC narrowly avoided failing to close on a major hotel acquisition and has struggled to secure new funding.

32.    Cash shortages have created operational instability, including risks to staffing, management, and franchise relationships with Hilton and Marriott.

33.    MSC's financial distress, lost business opportunities, and reputational harm cannot be fully remedied by a later damages award.

34.    The harm to MSC has grown progressively worse since Messner failed to return the escrow funds. If the missing escrow funds entrusted to Messner are not returned, that circumstance will likely cause MSC to fail. The harm is imminent and irreparable.

5

Docusign Envelope ID: FC85F4E0-B909-8308-8320-8550B744F3A3

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

Executed on 6/24/2026

By: Nimesh Chaudhari

Signed by:
C24BB852742E4E2...

Nimesh Chaudhari
CEO, MSC Companies, LLC