Docusign Envelope ID: C9E9D94E-B3F2-8048-838F-A6BFB8D0BBEC

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLORADO**

Civil Action No. 1:26-cv-01707-KAS

KOSHER EATS LLC,
EMERALD CONSULTING PARTNERS LLC,
ABBSON LLC,
MSC COMPANIES, LLC, and
HOMEPEOPLE CORPORATION,

      Plaintiffs,

vs.

MESSNER REEVES LLP,
DANIEL CHARTRAW,
TODD OWEN, and
CLEARWATER PREMIERE PERPETUAL MASTER LLC,

      Defendants.

---

## DECLARATION OF TARIK SANSAL

---

I, Tarik Sansal, declare as follows:

1.      I have personal knowledge of the matters stated in this declaration and would testify competently to them in court.

2.      I submit this declaration in support of Plaintiffs' motion for preliminary injunction and motion for prejudgment writ of attachment.

3.      I am the founder and Chief Executive Officer of Plaintiff HomePeople Corporation.

Docusign Envelope ID: C9E9D94E-B3F2-8048-838F-A6BFB8D0BBEC

## HomePeople and the BELOC

4.    HomePeople owns and operates Romio, a digital marketplace application that allows users to book services recommended by friends or local experts. Users and service providers can receive referral income for inviting their networks.

5.    HomePeople's platform is designed to integrate with Instagram and functions similarly to Uber, allowing influencers to earn referral income by connecting networks to strategic services across markets valued at approximately $5 trillion.

6.    HomePeople was formed in 2007 and began assembling its team in 2016 to prepare for an official launch.

7.    HomePeople invested approximately $26,000,000 in marketing, platform development, media outreach, and reputation-building.

8.    In late 2022 and early 2023, HomePeople secured a new round of funding, including a $2,000,000 investment from a key backer who anticipated raising an additional $10,000,000 from his network.

9.    To secure the final $4,000,000 needed for launch, HomePeople entered a BELOC dated March 23, 2023.

10.    The BELOC required a $1,000,000 ICA deposit, constituting 25 percent of the loan amount.

11.    The payment diminished HomePeople's capital position, but we believed the impact would be temporary because the BELOC terms required loan funding by September 3, 2023.

2

Docusign Envelope ID: C9E9D94E-B3F2-8048-838F-A6BFB8D0BBEC

12.     On April 20, 2023, I was asked to consent to transferring the $1,000,000 ICA deposit to Messner. I researched the firm and relied on its website, which described it as a large national law firm with over 100 attorneys, more than 70 partners, and 10 offices across the country.

13.     Messner's status as a national firm with substantial infrastructure was a critical factor in my decision to transfer HomePeople's $1,000,000 deposit under the specific condition that the escrowed funds would remain in the firm's sole possession and control.

14.     Had I known that Daniel Chartraw was involved in the BELOC transaction in any capacity, HomePeople would not have entered into the transaction or deposited any money with Messner. I would not have approved the transaction if I had known that Chartraw was involved, whether directly, through Clearwater, or through any other person or entity.

15.     The BELOC and FAQ contained representations about the safety of the deposit. The documents stated that the ICA deposit would remain in the Trustee's sole possession and control, that the funds would be held by a nominated Trustee attorney, that the funds would remain with the Trustee until the loan was delivered, that the money would be fully insured, and that the borrower would not be exposed to risk of loss.

16.     I understood that the loan might not fund. I did not understand that the deposit itself could be transferred away before funding. I would not have authorized that risk.

17.     On April 21, 2023, HomePeople's $1,000,000 ICA deposit was wired to Messner's Northern Trust COLTAF account.

18.     The loan did not fund and HomePeople received no refund.

**Demands for information and lulling statements**

19.     On November 22, 2023, after Messner failed to provide satisfactory answers, my prior counsel wrote to Welch and asked where the money was. The letter asked for a bank name,

Docusign Envelope ID: C9E9D94E-B3F2-8048-838F-A6BFB8D0BBEC

account number, and bank certification showing that the $1,000,000 deposited with the firm was safe and remained in escrow. The letter also asked for the amount and basis of any payments made out of the ICA escrow account.

20. Messner did not provide the requested bank name, account number, bank certification, or accounting.

21. On December 15, 2023, I received an email from Jason Aufdermaur, who stated that Clearwater funds would be disbursed imminently to several parties and that funds dealing with the INBE Capital issue would be disbursed into his trust account for closings to end the ordeal.

22. I had no prior knowledge of Clearwater as an entity associated with the BELOC loan or the return of HomePeople's escrow deposit. I never consented to Clearwater holding HomePeople's funds.

23. On January 8, 2024, my former counsel received an email from Aufdermaur stating that Martin Hale was looking to talk to Dan to understand the process.

24. On February 2, 2024, my former counsel received an email from Welch stating that he was finalizing bank details and had been told funds would be ready for release the following Monday afternoon or Tuesday morning.

25. On February 13, 2024, my former counsel received an email from Welch stating that Chase said it would push out tomorrow and that he had been verbally guaranteed payment.

26. On February 14, 2024, my former counsel received an email from Welch stating that he had just hung up with Chase head of treasury in New York and that a secondary account verification had been completed.

Docusign Envelope ID: C9E9D94E-B3F2-8048-838F-A6BFB8D0BBEC

27. On February 21, 2024, my former counsel received an email from Welch stating that funds were still working through clearance because of the correspondent nature and would be available tomorrow.

28. On February 27, 2024, my former counsel received an email from Welch stating that Titan had pursued two other institutions that could move quicker and that funds could be released to HomePeople that Friday.

29. On March 1, 2024, my former counsel received an email from Welch stating that an expert money mover at Chase was working on a hold.

30. Due to the repeated false statements and unfulfilled promises, I concluded that representations from Messner and Welch regarding the whereabouts of HomePeople's deposit were not credible.

## No authorization and no accounting

31. I never authorized Messner to transfer $1,000,000 to Chartraw, Clearwater, Sahara Las Vegas Corp., Owen, Dribble Dunk, Construction Testing Services, Harris Bank, any of those parties' creditors or attorneys, car dealerships, loan repayments, Titan Financial, or any other person or entity. I authorized only the deposit into Messner's trust account under the BELOC terms.

32. I did not authorize any party other than Messner to act as the escrow holder for HomePeople's deposit.

33. Despite multiple requests, HomePeople's $1,000,000 deposit has not been returned.

34. I have not received any accounting identifying where $1,000,000 went, who received it, why it was transferred, what authority supposedly allowed the transfer, or where any traceable proceeds are now located.

Docusign Envelope ID: C9E9D94E-B3F2-8048-838F-A6BFB8D0BBEC

35.    I have requested and demanded the return of HomePeople's ICA deposit from Messner numerous times, both directly and through counsel, including on June 5, 2026, through a communication sent to Messner's counsel at Gordon Rees and directed to Messner's highest-ranking personnel, including its President, Chief Executive Officer, Chief Operating Officer, and five managing partners. In response, my understanding is that Messner replied through counsel on June 9, 2026, disputing that it was obligated to provide an accounting to me as a non-client depositor. I also understand that INBE, Messner's former client, asked Messner for an accounting and Messner refused.

36.    Had I known Messner would transfer HomePeople's deposit away before funding, HomePeople would not have entered the transaction.

### Irreparable harm

37.    HomePeople has suffered severe financial and reputational damage due to Messner's conduct.

38.    HomePeople's reputation in the tech and influencer space, built through substantial goodwill investments, has been permanently damaged.

39.    The company's failure to launch created a reputational nightmare, making it extremely difficult to attract investors, talent, or business partners.

40.    HomePeople has been forced into insolvency and is no longer operational due to the financial depletion caused by the loss of its deposit.

41.    The $26,000,000 investment in platform development, marketing, and business expansion has been compromised.

42.    The failure to launch permanently crippled HomePeople's ability to regain its market position.

6

Docusign Envelope ID: C9E9D94E-B3F2-8048-838F-A6BFB8D0BBEC

43. Delays allowed competitors to fill the market gap, resulting in the permanent loss of first-mover advantage.

44. The company had secured partnerships with prominent celebrities and influencers to promote the platform, but those relationships have deteriorated.

45. HomePeople's failed launch resulted in negative publicity online, deterring potential business and investor interest.

46. HomePeople faces mounting legal pressure, judgments, insolvency, and lack of liquidity, leaving no viable path to recovery without court intervention.

47. The harm to HomePeople has grown progressively worse since Messner failed to return the escrow funds. If the missing escrow funds entrusted to Messner are not returned, that circumstance will likely cause HomePeople to fail permanently. The harm is imminent and irreparable in nature.

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

Executed on 6/24/2026

By: Tarik Sansal
8D3F98271D62402...
Tarik Sansal
CEO, HomePeople Corporation