**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO**

Civil Action No. 1:26-cv-01707-KAS

KOSHER EATS LLC,
EMERALD CONSULTING PARTNERS LLC,
ABBSON LLC, MSC COMPANIES, LLC and
HOMEPEOPLE CORPORATION,

      Plaintiffs,

v.

MESSNER REEVES LLP,
DANIEL CHARTRAW,
TODD OWEN, and
CLEARWATER PREMIERE PERPETUAL MASTER LLC

      Defendants.

---

**DEFENDANT MESSNER REEVES LLP'S MOTION TO DISMISS PLAINTIFFS'
COMPLAINT PURSUANT TO FED. R. CIV. P. 12(b)(6) AND 9(b)**

---

Defendant Messner Reeves LLP ("Messner" or "Messner Reeves"), through counsel and pursuant to Fed. R. Civ. P. 12(b)(6) and 9(b), respectfully moves the Court to dismiss Plaintiffs' Complaint.  In support, Messner states as follows:

## I.      INTRODUCTION.[1]

In this case, Plaintiffs attempt to relitigate claims dismissed with prejudice by the United States District Court for the District of Utah.  The Tenth Circuit affirmed the dismissal.  The case remains open in Utah federal court for resolution of a sanctions order

---

[1] Pursuant to D.C.COLO.LCivR 7.1 and the Court's Practice Standards, undersigned certifies he conferred with Plaintiffs' counsel regarding the relief sought by this Motion. Plaintiffs' counsel stated he is "not aware of a good faith basis" for the Motion.

against Plaintiffs and their attorneys.  Plaintiffs should not be permitted to avoid the outcome of the Utah proceeding before this Court.

The Court should dismiss Plaintiffs' Complaint against Messner for several reasons.  First, the Court should dismiss Plaintiffs' Complaint based on claim preclusion.  Plaintiffs' Complaint alleges claims under the federal Racketeer Influenced and Corrupt Organizations ("RICO") Act arising from Business Expansion Line of Credit ("BELOC") escrow-deposit transactions.  Plaintiffs previously asserted RICO claims based on the same transactions in the District of Utah.  That Court dismissed Plaintiffs' RICO claims with prejudice.  Plaintiffs appealed that judgment of dismissal and, on April 13, 2026, the Tenth Circuit affirmed.  *See Kosher Eats LLC v. Welch*, No. 25-4062, 2026 WL 982026, at *5 (10th Cir. Apr. 13, 2026).  Plaintiff filed this case in this District eight days later.

Claim preclusion bars Plaintiffs' attempt to obtain a different result in this Court.  Claim preclusion prevents a plaintiff who has received an adverse final judgment on one theory from filing a second federal action over the same transaction under another theory.  *Lenox MacLaren Surgical Corp. v. Medtronic, Inc.*, 847 F.3d 1221, 1239–45 (10th Cir. 2017).  The RICO claims against Messner are barred because Messner was a defendant in the Utah Action.  Plaintiffs had a full and fair opportunity to litigate any viable RICO theory in the Utah Action.  Their current "BELOC Enterprise" theory is built from the same alleged BELOC transactions and the same alleged losses. Plaintiffs' Complaint here is not the product of newly discovered transactions.[2]  It is a litigation choice Plaintiffs could

---

[2] Before the Utah Action was filed, Kosher Eats had already filed a federal RICO action in California naming Messner Reeves, Clearwater, Welch, Chartraw, and Titan in connection with the same alleged scheme.  *Kosher Eats LLC v. Messner Reeves LLP, et al.*, No. 2:24-cv-05161 (C.D. Cal.), Def. Ex. K at 1. Kosher Eats later voluntarily dismissed that action without prejudice.  Def. Ex. L at 1–2.  Although Plaintiffs may have learned

have pursued in Utah, and in fact tried to invoke on appeal only after they had "specifically disclaimed" association-in-fact in the Utah district court.  Def. Ex. E at 12.  Under any analysis, Plaintiffs' RICO claims are barred by claim preclusion.

Second, aside from claim preclusion, Plaintiffs' RICO claims fail under Rules 12(b)(6) and 9(b) because the Complaint pleads RICO by aggregation and does not allege with particularity the predicate acts supposedly attributable to Messner.

Third, assuming arguendo that Plaintiffs' allegations survive Rule 9(b) scrutiny, Plaintiffs do not allege sufficient facts that, if assumed as true, would establish a plausible pattern as RICO requires.  The Court therefore should dismiss Plaintiffs' RICO claims against Messner (Counts I and II) and decline supplemental jurisdiction over the remaining counts.

## II.    FACTUAL BACKGROUND.[3]

---

some additional information and therefore expanded their Complaint in this action, Plaintiffs knew the principal transactions, the facts forming the core of their RICO claims, and the alleged participants in the transactions when the District Court in Utah dismissed the Utah Action.  This is not a case where there is a newly discovered transaction or actor that would justify filing a new case in a different court.  Plaintiffs did not like the result in the Utah Action so they are trying again in a different court hoping for a different outcome. Claim preclusion exists to prevent such conduct.

[3] Messner requests that the Court take judicial notice of the filings attached as Messner's Exhibits A through N from the following actions: *Kosher Eats LLC v. Welch*, No. 2:24-cv-00520-DBB-DBP (D. Utah); *Kosher Eats LLC v. Welch*, No. 25-4062 (10th Cir.); *Emerald Consulting Partners LLC v. INBE Capital LLC and Messner Reeves LLP*, No. 30-2024-01378580-CU-BC-CJC (Cal. Super. Ct., Orange Cnty.); *HomePeople Corporation d/b/a Romio v. Messner Reeves LLP*, No. A-24-889648-B (Nev. Dist. Ct., Clark Cnty.); *Kosher Eats LLC v. Messner Reeves LLP, et al.*, No. 2:24-cv-05161 (C.D. Cal.); and *Kosher Eats LLC, et al. v. Messner Reeves LLP, et al.*, No. 30-2025-01490036-CU-BT-CXC (Cal. Super. Ct., Orange Cnty.). These cases involve the same/similar Plaintiffs and the same BELOC escrow-deposit allegations at issue here. Public court records are proper subjects of judicial notice at the Rule 12 stage. *See Johnson v. Spencer*, 950 F.3d 680, 705 (10th Cir. 2020) ("A district court . . . may take judicial notice of its own files and records, as well as facts which are a matter of public record, without converting a motion to dismiss into a motion for summary judgment.") (cleaned up).

3

## A.     Plaintiffs' Utah Action.

On July 25, 2024, the same five Plaintiffs in this case filed suit in the District of Utah, captioned *Kosher Eats LLC, et al. v. Welch, et al.*, No. 2:24-cv-00520-DBB-DBP (the "Utah Action").  Def. Ex. A at 1.  The Utah Complaint named Messner Reeves LLP, Torben Welch, Jake Brigham, and dozens of current or former Messner lawyers as defendants. *Id*. at 1–4. Plaintiffs invoked federal-question jurisdiction under RICO, 18 U.S.C. § 1961 et seq., and supplemental jurisdiction over related state-law claims. *Id*. ¶¶ 4–5.

Plaintiffs' Utah Complaint alleged they entered Business Expansion Line of Credit Agreements (BELOCs) with INBE Capital LLC. *Id.* ¶¶ 1, 16–19. Plaintiffs alleged that INBE was a shell lender with no assets or ability to make the promised loans. *Id*. ¶¶ 20–25. Plaintiffs further alleged that Welch, a Messner Reeves lawyer, obtained and edited a Business Expansion Line of Credit agreement—the "BELOC"—and used that document to induce Plaintiffs and other borrowers to deposit money into Messner Reeves' Northern Trust COLTAF account. *Id*. ¶¶ 26–42.

The alleged BELOC mechanism in Utah was the same mechanism Plaintiffs plead here. Plaintiffs alleged that the BELOC promised large loans on favorable terms, but first required borrowers to pay an "Interest Control Account" or "ICA" deposit equal to 25% of the loan amount. *Id*. ¶¶ 27–42. Those deposits allegedly were to be wired to Messner's Northern Trust COLTAF account, held by Messner as trustee, kept in Messner's "sole possession and control," and returned if the loans did not fund. *Id*. Plaintiffs alleged that the loans did not fund and that the ICA deposits were not returned. *Id*. ¶¶ 50–58.

Plaintiffs then plead RICO predicates based on those same transactions. The Utah

4

Complaint identified one set of alleged wire-fraud predicates, under 18 U.S.C. § 1343, by which Plaintiffs and other victims allegedly wired ICA deposits into Messner Reeves' trust account. *Id*. ¶¶ 43–55. It identified a second set of alleged predicates, under 18 U.S.C. § 2314, by which the same funds allegedly were stolen or transported out of that account. *Id*. ¶¶ 56–58. The alleged wire-fraud table included the same Plaintiffs, the same BELOC deposits, and the same Messner Reeves Northern Trust COLTAF receiving account at issue in this case. *Id*. ¶ 55.

On September 18, 2024, Plaintiffs filed a First Amended Complaint in the Utah Action. Def. Ex. B.  The Utah FAC preserved the same BELOC narrative and alleged the same two categories of RICO predicates, but changed the alleged RICO enterprise. Plaintiffs alleged that the current and former Messner lawyers who used the title "partner" were not partners of Messner Reeves LLP, but instead members of a separate, unregistered general partnership Plaintiffs called the "Messner General Partnership" or "MGP." *Id*. ¶¶ 2, 16, 83–92. Plaintiffs alleged that MGP was the enterprise for their RICO claims. *Id*. ¶¶ 99–110.

**B.      The Utah Court Dismissed Plaintiffs' RICO Claims with Prejudice.**

Defendants moved to dismiss the Utah FAC, and on May 6, 2025, Judge Barlow granted the motions.  Def. Ex. C at 1–2, 11.  The Utah court's ruling turned on Plaintiffs' alleged RICO enterprise.  It rejected Plaintiffs' theory that the MGP existed as an unregistered general partnership separate from Messner Reeves LLP and that this alleged partnership was the enterprise for their RICO claims. Def. Ex. C at 5–10.  The Utah Court declined to exercise supplemental jurisdiction over state law claims Plaintiffs asserted.  *Id*. The Utah Court also entered sanctions under Rule 11 against Plaintiffs'

5

counsel because Plaintiffs' MGP enterprise theory had "no factual support." Def. Ex. C at 14. The Clerk was directed to close the case, with the Utah court retaining jurisdiction over the amount of sanctions. *Id*. at 16.

### C.    The Tenth Circuit Affirmed.

Plaintiffs appealed, challenging the Utah court's rejection of their RICO enterprise theory. Def. Ex. E at 6, 8. The Tenth Circuit affirmed. *Id*. at 4, 15. The court held that Plaintiffs failed to plead facts pushing the existence of the alleged Messner General Partnership "across the line from possible to plausible," and that "[w]ithout the MGP," Plaintiffs' claims against the 76 individual attorneys and "the RICO claims against all parties" failed to state a claim upon which relief could be granted. *Id*. at 4.

The Tenth Circuit also rejected Plaintiffs' attempt to rely on alternative enterprise theories. Plaintiffs argued that the district court should have considered partnership by estoppel and association-in-fact. *Id*. at 12. The Tenth Circuit held that the record did not support that argument: the Utah court considered and distinguished Plaintiffs' partnership-by-estoppel authority, and Plaintiffs had "specifically disclaimed" any association-in-fact theory in the district court. *Id*. The Tenth Circuit therefore affirmed the dismissal of the Utah action. *Id*. at 15. The mandate was issued on May 5, 2026. Def. Ex. F at 1.

### D.    This Case.

On April 21, 2026, eight days after the Tenth Circuit affirmed the Utah dismissal, Plaintiffs filed this case. *Compl*. at 1; Def. Ex. E at 4, 15. The Complaint again invokes federal-question jurisdiction under RICO and supplemental jurisdiction under 28 U.S.C. § 1367. *Compl*. ¶¶ 49–50. The Complaint here is brought by the same five Plaintiffs and it

6

names Messner Reeves LLP again, although this time Plaintiffs added Daniel Chartraw, Todd Owen, and Clearwater Premiere Perpetual Master LLC as Defendants. *Id.* at 1

Plaintiffs' Complaint duplicates the BELOC allegations Plaintiffs made in the Utah FAC.  Plaintiffs again allege INBE was a sham lender, the BELOC agreements induced Plaintiffs to wire ICA deposits to Messner Reeves' Northern Trust COLTAF account, and INBE did not fund the loans or return the funds.  *Compare* Def. Ex. B ¶¶ 17–69, *with* Compl. ¶¶ 53–55, 346–68.  Plaintiffs again assert the same two claims under RICO based on the alleged predicate acts of wire fraud and interstate transportation of stolen money. *Compl*. ¶¶ 346–72.

The difference in this case is the alleged enterprise. In the Utah Action, Plaintiffs alleged that the "Messner General Partnership" was the RICO enterprise.  Def. Ex. B ¶¶ 99–110.  In this case, Plaintiffs abandon that theory and now allege an association-in-fact "BELOC Enterprise" consisting of Messner Reeves, Chartraw, Owen, Clearwater, and non-party participants Martin Hale/Latham Funding and Jason Aufdermaur/Wyatt Aufdermaur LLC.  *Id*. ¶¶ 347–52.

Plaintiffs add allegations concerning other named defendants and non-party participants.  *Id*. ¶¶ 347–52, 371.  Plaintiffs identify the same alleged injury as the Utah Action: the loss of Plaintiffs' ICA deposits. Plaintiffs allege that the predicate acts "advanced the same common scheme," "targeted the same class of victims, namely Plaintiffs," and were "designed to produce or perpetuate the same result," which Plaintiffs identify as the misappropriation and retention of Plaintiffs' ICA deposits.  *Id*. ¶ 365. Plaintiffs further allege their injury was caused by misrepresentations concerning the safety of the Messner Reeves trust account, INBE's funding capacity, Clearwater's role,

and Messner Reeves' purported role as escrow trustee. *Id*. ¶¶ 366–67.

**E.    Plaintiffs' Other Cases.**

Plaintiffs' current "BELOC Enterprise" theory is based on facts available to Plaintiffs when they litigated the Utah Action.  Before, during, and after the Utah Action, one or more Plaintiffs filed a series of lawsuits in different courts arising from the same BELOC escrow-deposit allegations:

- *Emerald Consulting Partners LLC v. INBE Capital LLC and Messner Reeves LLP*, Orange County Superior Court, Case No. 30-2024-01378580-CU-BC-CJC. Def. Ex. G. The action was dismissed without prejudice on July 29, 2024. Def. Ex. H.

- *HomePeople Corporation d/b/a Romio v. Messner Reeves LLP*, Clark County District Court, Nevada, Case No. A-24-889648-B. Def. Ex. I. The action was dismissed without prejudice on September 17, 2024. Def. Ex. J.

- *Kosher Eats LLC v. Messner Reeves LLP, et al.*, Central District of California, Case No. 2:24-cv-05161. Def. Ex. K. Kosher Eats dismissed the action without prejudice on July 25, 2024, the same day Plaintiffs filed the Utah Action. Def. Ex. L.

- *Kosher Eats LLC et al. v. Messner Reeves LLP, et al.*, Orange County Superior Court, Case No. 30-2025-01490036-CU-BT-CXC. Def. Ex. M. The court dismissed the action on forum non conveniens grounds on January 26, 2026. Def. Ex. N.

The first two actions were filed prior to the Utah Action.  On February 13, 2024, Plaintiff Emerald Consulting Partners LLC filed suit against INBE and Messner in Orange County Superior Court.  Def. Ex. G at 1.  Emerald's complaint alleged a BELOC transaction involving a $700,000 ICA deposit, the Messner Reeves trust account, the BELOC's "sole possession and control" language, INBE's alleged failure to fund, and Messner Reeves' alleged failure to return or account for the deposit. *Id*. ¶¶ 12–73. Emerald asserted claims for breach of contract, negligence, breach of fiduciary duty, restitution and unjust enrichment, and rescision. *Id*. ¶¶ 77–164.

On March 22, 2024, Plaintiff HomePeople Corporation filed suit against Messner Reeves in Clark County, Nevada. Def. Ex. I at 1. HomePeople's complaint alleged an INBE BELOC transaction involving a $1,000,000 ICA payment, an escrow arrangement with Messner Reeves as trustee, INBE's alleged failure to fund, and Messner Reeves' alleged failure to return or account for the ICA funds. *Id*. ¶¶ 3–33. HomePeople asserted claims for breach of contract and common-law agency, fraud, and prejudgment relief. *Id*. ¶¶ 34–53.

Plaintiff Kosher Eats previously filed a federal RICO action in the Central District of California. Def. Ex. K at 1. That complaint named Messner Reeves, Clearwater, Welch, Chartraw, and Titan Financial as defendants. *Id*. It alleged an advance-fee scheme involving BELOC deposits, INBE, Messner Reeves' trust account, Clearwater, Chartraw, Titan, and the alleged nonfunding and nonreturn of escrowed funds. *Id*. ¶¶ 1–9, 23–25, 142–90. It also alleged Defendants committed wire fraud and stole escrow deposits, including Kosher Eats' $2,000,000 deposit. *Id*. ¶¶ 1, 8, 25. Kosher Eats voluntarily dismissed that action on July 25, 2024, and its notice of dismissal referenced the Utah Action filed that same day. Def. Ex. L at 1–2.

After the Utah court dismissed Counts One and Two with prejudice in the Utah Action, all five Plaintiffs filed another action in Orange County Superior Court. Def. Ex. M at 1. That complaint named Messner Reeves, Welch, Chartraw, and Clearwater. *Id*. The allegations included the BELOC advance-fee scheme, INBE's alleged role as a sham lender, the "sole possession and control" escrow representations, use of Messner Reeves' trust account, and post-default communications. *Id*. ¶¶ 1–4, 31–45, 76–130, 131–208. Plaintiffs asserted claims for civil theft, conversion, fraud, unfair business

9

practices, negligence, negligent misrepresentation, breach of fiduciary duty, intentional and negligent interference, unjust enrichment, civil conspiracy, and aiding and abetting. *Id.* at 1–2, ¶¶ 356–454.  On January 26, 2026, the Orange County Superior Court granted Messner's motion to dismiss on forum non conveniens grounds.  Def. Ex. N at 1–9.

These cases concerned the same general BELOC escrow-deposit transactions alleged in this case.  They also named or described several of the actors identified in the current Complaint's "BELOC Enterprise," including Clearwater, Chartraw, Titan, INBE, and Messner Reeves. Def. Ex. G ¶¶ 12–73; Def. Ex. I ¶¶ 3–33; Def. Ex. K ¶¶ 1–9, 23–25, 142–90; Def. Ex. M ¶¶ 1–4, 31–45, 76–130, 131–208.

## III.    STANDARD OF REVIEW.

Rule 12(b)(6) permits dismissal for "failure to state a claim upon which relief can be granted."  Fed. R. Civ. P. 12(b)(6).  To withstand dismissal, the Complaint must contain sufficient factual allegations that, accepted as true, "state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)); *Santa Fe All. for Pub. Health & Safety v. City of Santa Fe*, 993 F.3d 802, 811 (10th Cir. 2021).  A Complaint offering mere "labels and conclusions" or a "formulaic recitation of the elements of a cause of action" is insufficient; similarly, "naked assertions devoid of further factual enhancement" cannot survive dismissal. *Iqbal*, 556 U.S. at 678 (cleaned up).

While the Court must accept well-pleaded factual allegations as true, it is "not bound to accept as true a legal conclusion couched as a factual allegation." *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 555). Accordingly, courts disregard conclusory statements and examine only whether the remaining factual allegations plausibly suggest

10

the defendant's liability.  *E.W. v. Health Net Life Ins. Co.*, 86 F.4th 1265, 1274 (10th Cir. 2023).

Claims sounding in fraud must state with particularity the circumstances constituting fraud.  Fed. R. Civ. P. 9(b).  Rule 9(b) requires Plaintiffs to plead "the time, place, and contents of the false representation, the identity of the party making the false statements and the consequences thereof."  *Tal v. Hogan*, 453 F.3d 1244, 1263 (10th Cir. 2006) (citation omitted).  RICO claims predicated on mail or wire fraud are subject to Rule 9(b).  *George v. Urban Settlement Servs.*, 833 F.3d 1242, 1254 (10th Cir. 2016).

The Court may resolve claim preclusion at the pleading stage when the defense is apparent from the complaint and judicially noticeable court records. See *Johnson v. Spencer*, 950 F.3d 680, 704–08 (10th Cir. 2020); *Campbell v. City of Spencer*, 777 F.3d 1073, 1080–82 (10th Cir. 2014). In deciding a Rule 12(b)(6) motion, the Court may consider the complaint, documents referenced in the complaint that are central to the plaintiff's claims and not disputed as authentic, and matters subject to judicial notice. *Toone v. Wells Fargo Bank, N.A.*, 716 F.3d 516, 521 (10th Cir. 2013). Public court records, including pleadings, orders, judgments, and appellate records from related litigation, are proper subjects of judicial notice. *Johnson*, 950 F.3d at 705; *St. Louis Baptist Temple, Inc. v. FDIC*, 605 F.2d 1169, 1172 (10th Cir. 1979).

### IV.    LEGAL ARGUMENT.

### A.    Plaintiffs' RICO Claims I and II Are Barred By the Doctrine of Claim Preclusion.

The doctrine of claim preclusions/res judicata prevents parties "from raising issues that could have been raised and decided in a prior action—even if they were not actually litigated." *E.g.*, *Lucky Brand Dungarees, Inc. v. Marcel Fashions Group, Inc.*, 590 U.S.

11

405, 412 (2020).    "Put simply, claim preclusion prevents the 'would've, could've, should've' in litigation.  Parties must bring all claims stemming from the same operative facts in one lawsuit, or forever hold their peace.  At bottom, you only get one bite at the apple."  *Markley v. U.S. Bank Nat'l Ass'n*, 142 F.4th 732, 737 (10th Cir. 2025) (citing *Lenox MacLaren Surgical Corp. v. Medtronic, Inc.*, 847 F.3d 1221, 1239 (10th Cir. 2017)).

Three elements apply to determine whether claim preclusion bars Plaintiffs' RICO claims: "(1) a [final] judgment on the merits in an earlier action; (2) identity of parties or privies in the two suits; and (3) identity of the cause of action in both suits." *Lenox*, 847 F.3d at 1239 (citation omitted).  Once these three elements are met, the Court should apply the doctrine "unless the party seeking to avoid preclusion did not have a full and fair opportunity to litigate the claim in the prior suit." *MACTEC, Inc. v. Gorelick*, 427 F.3d 821, 831 (10th Cir. 2005) (quotation omitted).  The application of res judicata will be viewed in the light most favorable to the nonmoving party and is a question of law. *Pelt v. Utah*, 539 F.3d 1271, 1280–81 (10th Cir. 2008).  Dismissal is appropriate in this case because each element is satisfied.

### 1.    The Utah Action Resulted in a Final Judgment on the Merits.

The first element of claim preclusion is satisfied because the Utah court entered a final merits judgment dismissing Plaintiffs' RICO claims with prejudice, and the Tenth Circuit affirmed that judgment. A dismissal with prejudice is a final judgment on the merits. *See e.g., Federated Dep't Stores, Inc. v. Moitie*, 452 U.S. 394, 399 n.3 (1981) ("The dismissal for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6) is a judgment on the merits.").

In the Utah Action, Plaintiffs asserted substantive RICO and RICO-conspiracy

claims under 18 U.S.C. §§ 1962(c) and 1962(d), premised on their allegation that the "Messner General Partnership" was the RICO enterprise. Def. Ex. B ¶¶ 99–120. The Utah court rejected that enterprise theory, held that Plaintiffs failed to plead a plausible RICO enterprise and dismissed Counts One and Two. Def. Ex. C at 10–11. The judgment made the disposition explicit: "Counts One and Two are DISMISSED with prejudice." Def. Ex. D at 1.

The Tenth Circuit affirmed. Def. Ex. E at 4, 15. It held that Plaintiffs failed to plead facts pushing the alleged MGP "across the line from possible to plausible," and that, "[w]ithout the MGP," the "RICO claims against all parties" failed to state a claim. *Id*. at 4. The mandate issued on May 5, 2026. Def. Ex. F at 1. The Utah Action therefore supplies a final judgment on the merits as to Plaintiffs' RICO and RICO-conspiracy claims.

### 2. The Same Parties Are Involved as to Messner Reeves.

The second element is satisfied because the same Plaintiffs sued the same primary defendant, Messner, in the Utah Action. Claim preclusion requires identity of parties or privies. *Lenox*, 847 F.3d at 1239–40. The identity requirement is straightforward as to Messner: the same five Plaintiffs filed the Utah Action and filed this action, and Messner Reeves LLP was a defendant in both. Def. Ex. B ¶¶ 8–15; *Compl*. at 1.

The fact that Plaintiffs have now added Chartraw, Owen, and Clearwater does not defeat claim preclusion as to Messner. Messner invokes the Utah judgment on its own behalf, based on the judgment it obtained in the Utah Action. The relevant party-identity question is therefore straightforward: whether the Plaintiffs asserting the RICO claims here are the same Plaintiffs who asserted the RICO claims against Messner Reeves in

13

Utah, and whether Messner Reeves was a defendant in both actions. Both are true. Def. Ex. B ¶¶ 8–15; *Compl*. at 1. The party-identity element is satisfied.

> **3.    The RICO Claims Here Are the Same Claims Previously Litigated to Final Judgment in the Utah Action.**

The claims in this case and the Utah RICO claims are the same claims because they arise from the same BELOC escrow-deposit transaction.  Under the Tenth Circuit's transactional approach, "a cause of action includes all claims or legal theories of recovery that arise from the same transaction, event, or occurrence." *Nwosun v. Gen. Mills Rests., Inc.*, 124 F.3d 1255, 1257 (10th Cir. 1997); *accord Lenox*, 847 F.3d at 1240. Claim preclusion therefore bars not only claims actually asserted in the first case, but also legal theories that *could have been asserted* there. *MACTEC*, 427 F.3d at 831. A plaintiff cannot avoid preclusion by recasting the same dispute "under the rubric of slightly different legal theories." *Plotner v. AT&T Corp.*, 224 F.3d 1161, 1170 (10th Cir. 2000).

In the Utah Action, Plaintiffs alleged that INBE was a sham lender; that the BELOC documents induced Plaintiffs to wire ICA deposits to Messner Reeves' Northern Trust COLTAF account; that the deposits were to remain in Messner Reeves' "sole possession and control"; that the promised loans did not fund; and that the deposits were not returned. Def. Ex. B ¶¶ 17–69. Plaintiffs then asserted RICO and RICO conspiracy claims under 18 U.S.C. §§ 1962(c) and 1962(d), relying on wire fraud to obtain the deposits and interstate transportation of stolen funds to remove them from the trust account. *Id*. ¶¶ 99–120.

The Complaint here pleads the same RICO claim—that the BELOCs induced them to wire ICA deposits to Messner Reeves' trust account, that the funds were represented to be secure and under Messner Reeves' "sole possession and control," that INBE did not fund the loans, and that Plaintiffs lost the same escrow deposits.  *Compl*. ¶¶ 53–55,

346–68.  Plaintiffs again assert civil RICO and RICO conspiracy under §§ 1962(c) and 1962(d), based on alleged predicate acts of wire fraud and interstate transportation of stolen money.  *Id.* ¶¶ 346–72.

The only material change is the alleged enterprise.  In the Utah Action, Plaintiffs alleged that the "Messner General Partnership" was the RICO enterprise.  Def. Ex. B ¶¶ 101, 106.  Here, Plaintiffs allege a broader "BELOC Enterprise." *Compl.* ¶¶ 347–52.  But a RICO enterprise is an element of a § 1962(c) theory; it is not the transaction that defines the claim.  The transaction remains the alleged BELOC escrow-deposit scheme.  Plaintiffs already sued under RICO for that scheme, litigated the RICO counts through dismissal and appeal, and lost.  They cannot restart the same federal RICO case here by replacing the rejected enterprise theory with a new one.

*Lenox* is on point. There, the plaintiff brought two antitrust actions against different entities and advanced a different theory of liability, but the Tenth Circuit held the later claims precluded the first because they arose from the same underlying events as the prior proceeding. 847 F.3d at 1240. The same principle applies here. Plaintiffs' "BELOC Enterprise" theory differs from their "Messner General Partnership" theory, but both theories seek RICO recovery for the same alleged loss arising from the same BELOC transactions.

Plaintiffs cannot avoid preclusion by adding more factual detail. The instant Complaint includes additional allegations concerning All Net, Clearwater, Hale, Aufdermaur, Titan, FIDES, bank records, lulling communications, and later fund tracing. Those allegations do not plead a new RICO injury. Claim preclusion applies to claims arising from the same transaction "even where the new claims are based on newly

15

discovered evidence," unless the evidence was fraudulently concealed or could not have been discovered with due diligence. *Lenox*, 847 F.3d at 1244. Where newly discovered facts stem from the same transaction, the plaintiff must seek amendment or supplementation in the first case; a later suit is proper only for "new and independent claims, not part of the previous transaction." *Id*. at 1244–45 (quoting *Hatch v. Boulder Town Council*, 471 F.3d 1142, 1150 (10th Cir. 2006)).

The identity-of-claims element is therefore met. Both actions arise from the same BELOC escrow-deposit transaction and seek RICO recovery for the same alleged injury. This Complaint's new enterprise label and additional factual detail do not create a new claim. They  support a repeat RICO claim that Plaintiffs already litigated to a final judgment with prejudice.

### 4.    Plaintiffs Had a Full and Fair Opportunity to Litigate their RICO Claims.

After determining that all three elements of claim preclusion are met, the Court must consider whether Plaintiffs had a full and fair opportunity to litigate their RICO claims in the Utah Action.   That exception is narrow and concerns fundamental procedural unfairness in the first action, not a plaintiff's regret over an unsuccessful litigation strategy. *See Yapp v. Excel Corp.*, 186 F.3d 1222, 1228–29 (10th Cir. 1999); *Lenox*, 847 F.3d at 1243–45 (rejecting effort to avoid preclusion where later claims and theories arose from the same underlying transaction).

Nothing in the Utah Action deprived Plaintiffs of a meaningful opportunity to litigate any RICO theory arising from the BELOC escrow-deposit scheme. Nor was the present "BELOC Enterprise" theory unavailable in Utah. The Utah FAC already alleged the facts necessary to plead any RICO enterprise theory arising from the BELOC transactions:

16

INBE allegedly was a sham lender; the BELOC allegedly promised that ICA deposits would remain in Messner's "sole possession and control"; Plaintiffs wired deposits to Messner Reeves' Northern Trust COLTAF account; the loans did not fund; and the deposits were not returned. Def. Ex. B ¶¶ 17–69. The Utah FAC also alleged the same predicate-act categories now pleaded here—wire fraud to obtain the deposits and interstate transportation of stolen funds to remove them from the trust account. *Id*. ¶¶ 56–58. Those allegations supplied the factual basis for the broader association-in-fact theory Plaintiffs now assert. Claim preclusion bars claims and legal theories that were or ***could have been asserted*** in the first action. *MACTEC*, 427 F.3d at 831. Therefore, this new enterprise theory could have been asserted by Plaintiffs in the Utah Action and cannot be asserted now as an excuse for not having the fair opportunity to litigate.

Plaintiffs also had an opportunity to litigate an association-in-fact theory and failed to preserve it. On appeal, Plaintiffs argued that the RICO enterprise element could be satisfied "either by general partnership or association-in-fact." Def. Ex. E at 12. The Tenth Circuit rejected that argument because Plaintiffs had "specifically disclaimed" association-in-fact in the district court and "did not pursue it." *Id*. Plaintiffs were not prevented from asserting that theory; they chose not to pursue it in the Utah district court and then attempted to revive it only after dismissal.

Further, Plaintiffs' filing of other cases concerning this same subject transaction demonstrates that the current enterprise allegations are not based on newly discovered information. Before the Utah Action was filed, Kosher Eats had already brought a federal RICO action in the Central District of California against Messner Reeves, Clearwater, Welch, Chartraw, and Titan based on the same BELOC escrow-deposit scheme, and it

17

voluntarily dismissed that case the same day Plaintiffs filed the Utah Action. Def. Ex. K at 1; Def. Ex. L at 1–2. The Emerald and HomePeople actions likewise preceded the Utah Action and concerned the same BELOC structure, ICA deposits, Messner Reeves trust-account allegations, and alleged nonfunding and nonreturn of deposits. Def. Ex. G ¶¶ 12–73; Def. Ex. I ¶¶ 3–33. Plaintiffs therefore had knowledge of the alleged actors and transactions before or during the Utah proceedings.

Finally, additional detail does not create a new opportunity to relitigate the dismissed RICO claims. Claim preclusion reaches claims arising from the same transaction "even where the new claims are based on newly discovered evidence," unless the evidence was fraudulently concealed or could not have been discovered with due diligence. *Lenox*, 847 F.3d at 1244. When later-discovered facts arise from the same transaction, the plaintiff must seek amendment or supplementation in the first case; a later lawsuit is proper only if those facts create "new and independent claims, not part of the previous transaction." *Id*. at 1244–45 (quoting *Hatch v. Boulder Town Council*, 471 F.3d 1142, 1150 (10th Cir. 2006)). Plaintiffs plead no new RICO injury here. They still seek RICO recovery for the same alleged loss of the same BELOC deposits. Their remedy was to plead and preserve any viable enterprise theory in Utah, not to file a new federal RICO action in Colorado after losing there.

**B.     The Court Should Dismiss Plaintiffs' RICO Claims for Failure to State a Claim, Even If Claim Preclusion Does Not Dispose of Plaintiffs' RICO Claims.**

Assuming for the sake of argument that the Court finds claim preclusion does not justify dismissal, the Court should dismiss Plaintiffs' RICO claims (Counts I and II) against Messner under Fed. R. Civ. P. 9(b) and 12(b)(6).  To state a § 1962(c) claim, Plaintiffs must plausibly allege that each Defendant "conducted or participated, directly or

18

indirectly, in the conduct of" the enterprise's affairs through a pattern of racketeering activity.  18 U.S.C. § 1962(c); *Reves v. Ernst & Young*, 507 U.S. 170, 177–79 (1993); *George*, 833 F.3d at 1248.  Because the alleged predicate acts sound in fraud, Rule 9(b) requires Plaintiffs to plead the "time, place, and contents of the false representation, the identity of the party making the false statements and the consequences thereof." *Tal*, 453 F.3d at 1263. (citation omitted).  The Court should apply these standards and dismiss Plaintiffs' RICO claims for several reasons.

First, Plaintiffs' RICO claims fail under Rule 9(b) because the Complaint pleads RICO by aggregation. Plaintiffs allege a broad "BELOC Enterprise," assign roles to its supposed members, and then attribute conduct to "Defendants" or the "Enterprise" as a whole. *Compl.* ¶¶ 347–52, 353–67. That is insufficient as to Messner. Rule 9(b) requires Plaintiffs to plead the specific fraudulent statement or transmission attributable specifically to Messner, who made it, when it was made, to which Plaintiff it was directed, why it was false when made, and how it caused that Plaintiff to wire funds. *Tal*, 453 F.3d at 1263. Allegations about other supposed enterprise participants, post-default communications, or the enterprise as a collective do not plead a fraud predicate against Messner with particularity.

The Complaint also fails to plead that Messner operated or managed a RICO enterprise. RICO requires participation in the operation or management of the enterprise itself; it is not enough to allege that a defendant provided services, held funds, represented a client, or had some relationship to the transaction. *See Reves*, 507 U.S. at 179; *BancOklahoma*, 194 F.3d at 1101–02; *Brannon*, 153 F.3d at 1148–49. The Complaint alleges that Messner maintained the COLTAF account, appeared in the

19

BELOC documents, and allegedly provided institutional credibility. Those allegations do not plausibly show that Messner directed the affairs of a RICO enterprise through racketeering activity. They describe Plaintiffs' theory of why they trusted the transaction, not facts showing that Messner operated or managed an enterprise.

The same defect defeats the operation-or-management element. RICO requires facts showing that Messner conducted or participated in the operation or management of the alleged enterprise, not merely that Messner maintained a trust account, represented a client, or was associated with others Plaintiffs accuse of wrongdoing. *See Reves,* 507 U.S. at 179; *BancOklahoma*, 194 F.3d at 1101–02; *Brannon*, 153 F.3d at 1148–49. The Complaint does not plausibly allege that Messner, as distinct from generalized references to the alleged "Enterprise," operated or managed a RICO enterprise through a pattern of racketeering activity.

Second, Plaintiffs failed to allege facts that, if believed, would plausibly establish the continuity necessary to establish a RICO pattern. A "pattern of racketeering activity" requires predicate acts that are related and that amount to, or threaten, continued criminal activity. *Tal*, 453 F.3d at 1267. The Complaint does not allege that kind of continuity. It describes a closed course of conduct in which Plaintiffs paid ICA deposits under BELOC agreements, the loans did not fund, and Plaintiffs' ICA deposits were not returned. Plaintiffs' own pleading confirms the point: the alleged predicate acts "advanced the same common scheme" and were designed to produce the same result of "the misappropriation and retention of Plaintiffs' escrow deposits." *Compl*. ¶ 365. Under Tenth Circuit precedent, a closed effort to accomplish a single unlawful objective against a defined group of victims does not become a RICO pattern merely because the complaint describes the aftermath

in detail. *See Johnson v. Heath*, 56 F.4th 851, 861–62 (10th Cir. 2022); *Phelps v. Wichita Eagle-Beacon*, 886 F.2d 1262, 1273–74 (10th Cir. 1989).

The lulling allegations do not cure the defect. Communications after the alleged deposit losses do not transform investment transactions made pursuant to the same BELOC into open-ended racketeering. Plaintiffs do not plausibly allege a continuing threat of future racketeering activity independent of the same BELOC deposits at issue in Utah and here in Colorado. *See Tal*, 453 F.3d at 1268–69.

Count II fails for the same reasons. A RICO conspiracy claim under § 1962(d) cannot survive unless the complaint plausibly alleges an agreement to violate a substantive RICO provision. *Tal*, 453 F.3d at 1270. Plaintiffs plead no viable § 1962(c) claim against Messner and no particularized facts showing that Messner agreed to conduct the affairs of a RICO enterprise through a pattern of racketeering activity. Count II should therefore be dismissed as to Messner.

**C.    The Court Should Decline Supplemental Jurisdiction Over the State Law Claims.**

The Court should dismiss the RICO claims under claim preclusion, as described in Section IV(A) or for failure to state a claim as described in Section IV(B). *See supra.* Once the Court dismisses Plaintiffs' RICO claims, no federal claim would remain. In such an instance, the Court should dismiss Plaintiffs' state law claims. *Foxfield Villa Assocs., LLC v. Robben*, 967 F.3d 1082, 1103 (10th Cir. 2020) (citation omitted).

In their Complaint, Plaintiffs ask the Court to exercise supplemental jurisdiction over their state-law claims under 28 U.S.C. § 1367. *Compl.* ¶¶ 49–52. Whether to exercise supplemental jurisdiction is a matter committed to the Court's discretion, but supplemental jurisdiction typically only is appropriate "when the parties have already

21

expended a great deal of time and energy on the state law claims…." *United States v. Botefuhr*, 309 F.3d 1263, 1273 (10th Cir. 2002) (citation omitted). "[A]bsent such a showing, [however,] a district court should normally dismiss supplemental state law claims after all federal claims have been dismissed." *Id.*

Section 1367(c)(3) permits a district court to decline supplemental jurisdiction after it "has dismissed all claims over which it has original jurisdiction," and the Tenth Circuit has recognized that, when federal claims are dismissed before trial, the court "may, and usually should, decline to exercise jurisdiction over any remaining state claims." 28 U.S.C. § 1367(c)(3); *Smith v. City of Enid ex rel. Enid City Comm'n*, 149 F.3d 1151, 1156 (10th Cir. 1998).

Plaintiff cannot make a showing that exercise of supplemental jurisdiction is appropriate in this case. This case is at the pleading stage, no discovery has occurred, and Counts III through X raise complicated questions of state-law issues such as the scope of a lawyer's duties to clients compared to nonclients, whether a law firm's distribution of funds at the request of a client could be civil theft or conversion, and the scope of a lawyer's fiduciary obligations under state law, among others. The Utah court followed this course after dismissing Plaintiffs' RICO claims. Def. Ex. D at 1–2. This Court should do the same.

## V. CONCLUSION.

Wherefore, Messner Reeves respectfully requests that the Court dismiss Plaintiffs' RICO claims (Counts I and II) against Messner Reeves under the doctrine of claim preclusion, for failing to satisfy Fed. R. Civ. P. 9(b), and for failing to state a claim pursuant to Fed. R. Civ. P. 12(b)(6). The Court should decline to exercise supplemental jurisdiction

22

and award such other relief as just and proper.

DATED this 25th of June 2026.

s/ Troy R. Rackham
Troy R. Rackham
Keith A Call
**SPENCER FANE LLP**
John M. Palmeri
**GORDON REES SCULLY MANSUKHANI**

*Counsel For Defendant Messner Reeves LLP*

23

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that on June 25th, 2026, a true and correct copy of the foregoing was served via *CCES* upon the following:

Kenneth E. Chase
Chase Law & Associates, P.A.
951 Yamato Road, Suite 280
Boca Raton, FL 33431
kchase@chaselaw.com


 */s/Jessica Kallweit*
Legal Assistant