EXHIBIT
**B**

Stephen K. Christiansen (6512)
CHRISTIANSEN LAW, PLLC
311 South State Street, Ste. 250
Salt Lake City, Utah 84111
Telephone: 801.716.7016
steve@skclawfirm.com

Kenneth E. Chase (Admitted Pro Hac Vice)
CHASE LAW & ASSOCIATES, P.A.
2700 N. Military Trail, Suite 150
Boca Raton, FL 33431
Telephone: 305.402.9800
kchase@chaselaw.com

Howard W. Foster (Admitted Pro Hac Vice)
FOSTER PC
155 N. Wacker Drive, Suite 4250
Chicago, IL 60606
Telephone: 312.726.1600
hfoster@fosterpc.com

*Attorneys for Plaintiffs*

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF UTAH

| | |
|---|---|
| KOSHER EATS LLC, a Florida limited liability company, EMERALD CONSULTING PARTNERS LLC, a Florida limited liability company, ABBSON LLC, a New York limited liability company, MSC COMPANIES, LLC, a Utah limited liability company, and HOMEPEOPLE CORPORATION, a New York corporation, <br><br> Plaintiffs, <br><br> v. <br><br> TORBEN WELCH, an individual, CALEB MEYER, an individual, MICHELLE HARDEN, an individual, RENNE FINCH, an individual, DAVID REEVES, an individual, BENJAMIN TIETGEN, an individual, DARREN ALBERTI, an individual, KATE BAILEY, an individual, BRENDA BARTELS, an individual, ALEX | **FIRST AMENDED COMPLAINT** <br><br> **Case No. 2:24-cv-00520-DBP** <br><br> **Chief Magistrate Judge Dustin B. Pead** <br><br><br> **<u>JURY DEMANDED</u>** |

BELTZ, an individual, AMBER BLASINGAME, an individual, BRETT BOON, an individual, VALERIE BROMLEY, an individual, EDGAR CARRANZA, an individual, KATHLEEN CARTER, an individual, CYNTHIA CARUCCI, an individual, CHARLES CAVANAGH, an individual, LAURA CHARTRAND, an individual, GREGORY COHEN, an individual, KIMBERLEY CRONIN, an individual, ISAAC CRUM, an individual, ERICA DEATHERAGE, an individual, MATTHEW DEENIHAN, an individual, ALLISON DODD, an individual, BRIEANNA DOLMAGE, an individual, PATRICK DRAKE, an individual, R.J. ERTMER, an individual, RACHEL FARR, an individual, MARY BRYNE FLETCHER, an individual, AUSTIN GEMMELL, an individual, MATTHEW GEORGE, an individual, DEANNA GILBERTSON, an individual, MARGARET GRAY, an individual, SCOTT HAWRANEK, an individual, ANDREW HOLLINS, an individual, AMY HUFF, an individual, CRAIG HUMPHREY, an individual, MATT JEDRZEJEK, an individual, MACLAIN JOYCE, an individual, IDIN KASHEFIPOUR, an individual, DARA KELLER, an individual, DANIEL KLETT, an individual, STEVEN KNAUSS, an individual, MARJORIE KRATSAS, an individual, JASON MARTINEZ, an individual, BRYANT MESSNER, an individual, IAN MITCHELL, an individual, SCOTT MONROE, an individual, SIMONE MONTOYA, an individual, BRUCE MONTOYA, an individual, KATHLEEN MOWRY, an individual, CHRISTINA MUNDY, an individual, ANN NGUYEN, an individual, KATHERINE OTTO, an individual, JONATHAN OWENS, an individual, JULIAN PARDO DE ZELA, an individual, FRANK PERRETTA, an individual, PETER PIERCE, an individual, WILLIAM RANDALL, an individual,

| | |
|---|---|
| RICHARD REICE, an individual, ADAM ROYVAL, an individual, HEATHER SALG, an individual, EDWIN SCHWARTZ, an individual, MIKHAIL SHAH, an individual, GREG SITRICK, an individual, ROWAN SMITH, an individual, AARON SOLEIMANI, an individual, HEATHER STERN, an individual, JOHN STEVENS, an individual, DEANNE STODDEN, an individual, MATTHEW SULLIVAN, an individual, JENNY THORNTON, an individual, WADE WARTHEN, an individual, ANDREW WELCH, KARIE WILSON, an individual, DOUGLAS WOLANSKE, an individual, JON ZIMMERMAN, an individual, JAKE BRIGHAM, an individual, MESSNER REEVES LLP, a Colorado partnership, and MESSNER GENERAL PARTNERSHIP, a Colorado general partnership, | |
| Defendants. | |

Plaintiffs Kosher Eats LLC ("Kosher Eats"), Emerald Consulting Partners LLC ("Emerald"), Abbson LLC ("Abbson"), MSC Companies LLC ("MSC"), and HomePeople Corporation ("HomePeople") file this First Amended Complaint against Defendants Torben Welch, Caleb Meyer, Michelle Harden, Renne Finch, David Reeves, Benjamin Tietgen, Darren Alberti, Kate Bailey, Brenda Bartels, Alex Beltz, Amber Blasingame, Brett Boon, Valerie Bromley, Edgar Carranza, Kathleen Carter, Cynthia Carucci, Charles Cavanagh, Laura Chartrand, Gregory Cohen, Kimberley Cronin, Isaac Crum, Erica Deatherage, Matthew Deenihan, Allison Dodd, Brieanna Dolmage, Patrick Drake, R.J. Ertmer, Rachel Farr, Mary Bryne Fletcher, Austin Gemmell, Matthew George, Deanna Gilbertson, Margaret Gray, Scott Hawranek, Andrew Hollins, Amy Huff, Craig Humphrey, Matt Jedrzejek, Maclain Joyce, Idin Kashefipour, Dara Keller, Daniel Klett, Steven Knauss, Marjorie Kratsas, Jason Martinez, Bryant Messner, Ian Mitchell, Scott Monroe, Simone Montoya, Bruce Montoya, Kathleen Mowry, Christina Mundy, Ann

3

Nguyen, Katherine Otto, Jonathan Owens, Julian Pardo de Zela, Frank Perretta, Peter Pierce, William Randall, Richard Reice, Adam Royval, Heather Salg, Edwin Schwartz, Mikhail Shah, Greg Sitrick, Rowan Smith, Aaron Soleimani, Heather Stern, John Stevens, Deanne Stodden, Matthew Sullivan, Jenny Thornton, Wade Warthen, Andrew Welch, Karie Wilson, Douglas Wolanske, Jon Zimmerman, Jake Brigham, Messner Reeves LLP, and Messner General Partnership.

## **INTRODUCTION**

1.      Plaintiffs are borrowers whose millions of dollars in escrow deposits were stolen from a law firm trust account through sham loan transactions orchestrated by Torben Welch, the person who refers to himself as the managing partner of the Messner Reeves LLP ("Messner Reeves") Utah office. It is hard to believe that a lawyer would engage in such illegal and unethical conduct, but Welch's scheme crosses the line into racketeering because he is not finished. He continues to conduct the scheme, hoping to ensnare more borrower victims. The phony lender's website, which contains false information, remains active, and Welch has failed to return the escrow funds or honestly account for the missing money. This case is accordingly brought pursuant to federal RICO laws.

2.      Moreover, Welch's 76 current and former law partners, who have all falsely proclaimed to be partners in Messner Reeves, and who are instead partners in a separate unregistered general partnership, are vicariously liable for Welch's misconduct pursuant to their general partnership with Welch. They are co-defendants in this case.

3.      Plaintiffs also assert supplemental state law claims of conversion, negligence, and breach of fiduciary duty.

## JURISDICTION AND VENUE

4.     The Court has original subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1331 because Plaintiffs assert claims under the RICO Act, 18 U.S.C. § 1961 et seq. RICO's civil damages provision is codified at 18 U.S.C. §1964(c).

5.     This Court has supplemental subject matter jurisdiction over Plaintiffs' state law claims pursuant to 28 U.S.C. § 1367. Supplemental jurisdiction is conferred pursuant to these claims per 28 U.S.C. § 1367 because (i) this Court has original jurisdiction over this action, and (ii) Plaintiffs' state law claims are so related to the claims within this Court's original jurisdiction that they form part of the same case or controversy.

6.     Venue is proper in this Court pursuant to 18 U.S.C. §1965(a), RICO's venue provision, because Welch resides in this district and "transacts his affairs" here.

7.     The other Defendants may be sued here pursuant to RICO's nationwide service of process provision, 18 U.S.C. §1965(b), because "the ends of justice" require them to be part of this case as their actions are part of the overall controversy.

## PARTIES

8.     Plaintiff Kosher Eats is a Florida limited liability company with one member, Frysta Management LLC, a Florida limited liability company, whose two members, Noah Lasko and Deborah Lasko, are Florida citizens.

9.     Plaintiff Emerald is a Florida limited liability company with two members, Jonathan Fodera, a Florida citizen, and Titan Strategic Partners, LLC a New Jersey limited liability company. Titan Strategic Partners, LLC has two members, Titan Advisory Services, LLC, whose member, Saleem Elmasri, is a New Jersey citizen, and Thomas Murphy, a New York citizen.

10.     Plaintiff Abbson is a New York limited liability company with two members, First Principles Holdings LLC, a New York limited liability company, whose member Chad Abbott is a New York citizen, and Verum Holdings, Inc., a Delaware corporation with a principal place of business in New York.

11.     Plaintiff MSC is a Utah limited liability company whose member, Nimesh Chaudhari, is a Utah citizen.

12.     Plaintiff HomePeople is a New York corporation with a principal place of business in New York.

13.     Regarding Defendants, Torben Welch is a citizen of Utah. Meyer is a citizen of Colorado. Harden is a citizen of Colorado. Finch is a citizen of Nevada. David Reeves is a citizen of Colorado. Tietgen is a citizen of Arizona. Alberti is a citizen of Colorado. Bailey is a citizen of Utah. Bartels is a citizen of Colorado. Beltz is a citizen of Colorado. Blasingame is a citizen of Colorado. Boon is a citizen of California. Bromley is a citizen of Colorado. Carranza is a citizen of Nevada. Carter is a citizen of California. Carucci is a citizen of California. Cavanagh is a citizen of Colorado. Chartrand is a citizen of Colorado. Cohen is a citizen of California. Cronin is a citizen of Colorado. Crum is a citizen of Arizona. Deatherage is a citizen of Arizona. Deenihan is a citizen of California. Dodd is a citizen of Colorado. Dolmage is a citizen of California. Drake is a citizen of Colorado. Ertmer is a citizen of Colorado. Farr is a citizen of Colorado. Bryne Fletcher is a citizen of Colorado.  Gemmell is a citizen of Colorado. George is a citizen of Colorado. Gilbertson is a citizen of California. Gray is a citizen of Colorado. Hawranek is a citizen of Colorado. Hollins is a citizen of California. Huff is a citizen of Colorado. Humphrey is a citizen of California. Jedrzejek is a citizen of California. Joyce is a citizen of Colorado. Kashefipour is a citizen of California. Keller is a citizen of Colorado. Klett is a citizen of Nevada. Knauss is a citizen of

6

Nevada. Kratsas is a citizen of Nevada. Martinez is a citizen of Nevada. Bryant Messner is a citizen of Colorado. Mitchell is a citizen of Colorado. Monroe is a citizen of California. Simone Montoya is a citizen of Colorado. Bruce Montoya is a citizen of Colorado. Mowry is a citizen of Colorado. Mundy is a citizen of Nevada. Nguyen is a citizen of California. Otto is a citizen of Colorado. Owens is a citizen of Nevada. Pardo de Zela is a citizen of California. Perretta is a citizen of California. Pierce is a citizen of California. Randall is a citizen of California. Reice is a citizen of New York.  Royval is a citizen of Colorado. Salg is a citizen of Colorado. Schwartz is a citizen of California. Shah is a citizen of New York. Sitrick is a citizen of Arizona. Smith is a citizen of Arizona. Soleimani is a citizen of California. Stern is a citizen of California. Stevens is a citizen of Colorado. Stodden is a citizen of Colorado. Sullivan is a citizen of Colorado. Thornton is a citizen of Colorado. Warthen is a citizen of Colorado. Andrew Welch is a citizen of Utah. Wilson is a citizen of Nevada. Wolanske is a citizen of Colorado. Zimmerman is a citizen of California. All 77 Defendants referenced in this paragraph are the "General Partnership Defendants."

14.    Defendant Brigham is a citizen of Utah.

15.    Defendant Messner Reeves is a Colorado partnership, with a Utah office located at 65 East Wadsworth Park Drive, Suite 110, Draper, UT 84020, whose 11 partners consist of non-parties Bryant S. "Corky" Messner, P.C., a Colorado corporation, Bruce A. Montoya, P.C., a Colorado corporation, David A. Reeves, P.C., a Colorado corporation, John K. Shunk, P.C., a Colorado corporation, Douglas C. Wolanske, Inc., a Colorado corporation, Torben M. Welch, P.C., a Utah corporation, M. Caleb Meyer, P.C., a Colorado corporation, Michelle L. Harden, P.C., a Colorado corporation, Matthew R. Sullivan, P.C., a Colorado corporation, Jon B. Zimmerman, P.C., a California corporation, and Renee M. Finch, P.C., a Nevada corporation.

16.     Defendant Messner General Partnership is an unincorporated Colorado general partnership, whose 77 partners currently are, or were at relevant times, Defendants Torben Welch, Meyer, Harden, Finch, David Reeves, Tietgen, Alberti, Bailey, Bartels, Beltz, Blasingame, Boon, Bromley, Carranza, Carter, Carucci, Cavanagh, Chartrand, Cohen, Cronin, Crum, Deatherage, Deenihan, Dodd, Dolmage, Drake, Ertmer, Farr, Bryne Fletcher, Gemmell, George, Gilbertson, Gray, Hawranek, Hollins, Huff, Humphrey, Jedrzejek, Joyce, Kashefipour, Keller, Klett, Knauss, Kratsas, Martinez, Bryant Messner, Mitchell, Monroe, Simone Montoya, Bruce Montoya, Mowry, Mundy, Nguyen, Otto, Owens, Pardo de Zela, Perretta, Pierce, Randall, Reice, Royval, Salg, Schwartz, Shah, Sitrick, Smith, Soleimani, Stern, Stevens, Stodden, Sullivan, Thornton, Warthen, Andrew Welch, Wilson, Wolanske, and Zimmerman. The citizenship of the aforementioned partners is reflected in Paragraph 13 and is hereby incorporated by reference.

**STATEMENT OF FACTS**

A.     **Welch's Scheme to Deceive Borrowers and Steal their Money**

17.     Welch created and conducted a scheme to defraud borrowers and steal over $10 million. Borrowers were required to deposit funds into escrow in Messner Reeves' trust account as deposits for loans from a sham lender named INBE Capital Group, LLC ("INBE") prior to receiving any loan proceeds.

18.     After committing acts of wire fraud to obtain $10,070,000 in Interest Control Account ("ICA") deposits belonging to the borrowers in Messner Reeves' Northern Trust account, which was a Colorado Lawyer Trust Account Foundation ("COLTAF") account, Welch stole the ICA deposits, lied about it, and sought additional deposits to perpetuate the scheme.

19.     As detailed below, Welch's scheme involves the repeated commission of two federal crimes through an enterprise, thereby violating RICO.

8

20.     Plaintiffs Kosher Eats, Emerald, Abbson, MSC, and HomePeople are among the victims of the criminal scheme. The total amount stolen from all victims was $10,070,000, with $8,670,000 stolen from the Plaintiffs alone. And Welch is not done.  He is trolling for more victims online.

21.     On September 26, 2022, a shell Wyoming limited liability company named INBE was formed, despite having no assets.

22.     INBE is a sham lender with no assets, funding, or capitalization.

23.     INBE's principals, Jonathan Wright and Craig Boddington, who reside in Virginia and Florida respectively, do not possess, and have never possessed, meaningful wealth or capital to issue any substantive loan. They have no lending experience, and INBE lacks regulatory approval to issue loans.

24.     Welch has known, at all relevant times, that INBE's website contains materially false statements. https://theinbegroup.com/ (visited September 18, 2024).

25.     For example, on December 3, 2022, just 68 days after INBE's inception, while INBE had no capitalization at all, its website falsely claimed that INBE had $13.36 billion in a "rapidly growing global investment pipeline" and the "capacity up to $50B per transaction."

26.     By April 20, 2023, Welch, the General Partnership Defendants, and Messner Reeves were representing INBE, and they were fully aware that INBE was insolvent and deceiving potential borrowers.

27.     By April 20, 2023, Welch obtained a draft of a fraudulent document referred to as a Business Expansion Line of Credit Agreement ("BELOC") from a template used by Prime Capital Ventures, LLC ("Prime"), whose owner is currently incarcerated without bail on charges of wire fraud. *United States of America v. Kris Roglieri*, N.D.N.Y., Case No. 1:24-CR-261.

9

28.    On April 20, 2023, Welch edited a draft of the Prime BELOC.

29.    Pursuant to Welch's revisions to the BELOC, borrowers were misled to believe they could receive millions of dollars in interest-only loans at a six percent interest rate with no principal repayment for ten years, without a personal guarantee, real estate collateral, a credit check, or any substantive underwriting. But Welch knew at all relevant times that this was pie in the sky.

30.    Welch's draft of the BELOC provided that these large loans would be funded quickly, with the first tranche of funding issued within 90 days, contingent upon the borrower making an ICA deposit amounting to 25% of the loan in Messner's trust account.

31.    The BELOC loan terms are patently absurd from a lender's perspective. Without a personal guarantee or real estate collateral, a borrower could receive the massive loan and then dissolve its business while retaining all the funds, leaving the lender with no recourse. Moreover, the six percent interest-only rate for ten years rendered the loan essentially worthless on an inflation-adjusted basis, providing virtually no economic benefit even in the best-case scenario where the borrower made every payment without risk.

32.    As further discussed herein, Welch's BELOC draft falsely stated that the borrower's ICA deposit of 25% of the loan amount would remain in Messner Reeves' "sole possession and control" until the issuance of the loan and that the ICA deposit would be promptly returned if the loan did not fund.

33.    Welch was aware that INBE had no money to loan, and instead of holding the borrowers' ICA deposits in Messner Reeves' trust account, Welch stole $10,070,000 of the victims' money from the Messner Reeves trust account. He transferred the stolen money across

state lines from the Messner Reeves Northern Trust COLTAF account in Colorado to an account in Wyoming. To perpetuate the scheme, Welch continues to seek more ICA deposit money.

34.     Welch used his BELOC draft to perpetrate the predicate acts of wire fraud. He conveyed the same substantive terms of his BELOC draft to each victim through INBE, prompting the victims to sign the fraudulent BELOC and wire their ICA deposit funds to Messner Reeves.

35.     In search of victims, upon completing his BELOC draft on April 20, 2023, Welch provided his BELOC to brokers, asking them to attract borrowers in need of capital. Welch knew that small businesses like Plaintiffs, seeking capital to expand their operations, would be enticed by the BELOC's low rate, interest-only repayment terms, lack of personal guarantee, lack of real estate collateral, and absence of a credit check or meaningful underwriting. Moreover, the loan amounts, totaling over $40,000,000, were enormous compared to any other financing available to the borrowers.

36.     Welch's BELOC draft was even more pernicious than the Prime BELOC draft because, unlike the Prime BELOC, the Welch BELOC featured the large law firm Messner Reeves as the "trustee," which was obligated to hold the ICA deposit funds in its sole possession and control pending the loan funding.

37.     The role of Messner Reeves as the escrow agent and "trustee," holding the ICA deposits in its "sole possession and control" pending the loan funding, made the arrangement enticing to borrowers. As represented to borrowers pursuant to the scheme, the inclusion of Messner Reeves as the escrow agent alleviated any concerns about the potential loss of the ICA deposit.

11

38.      Welch's BELOC contained an accompanying Capital Options Expanded FAQ,

which was signed by Plaintiffs and victims in connection with the BELOC. This FAQ contains the

following false representations:

**How is my deposit safeguarded prior to funding?**

➢ We nominate a third-party trustee (Attorney) [Messner Reeves] to hold
the funds.
➢ Funds remain with the Trustee [Messner Reeves] until we've delivered
the loan.
➢ We contractually agree to reimburse the Borrower the amount of their
ICA Advance Cost.
➢ Because we keep insurance on all funds held by our trustees.
➢ In other words, we make sure we absorb all the financial risk.
➢ Leaving the only possible risk as "opportunity risk."
➢ Rather than having the risk of losing the capital itself.

**How will I have certainty that my initial money won't disappear?**

➢ Within our format, we never control your funds, and we ensure that you
are never exposed to any risk of loss, as we even pay for your money to
be fully insured.
➢ The most important issue for us is the safety of your capital. And the
complete mitigation of financial risk to you (and your investors)
throughout your deal.

**Is there anything that could potentially interfere with receiving the
loan?**

➢ If your funds are not from illicit sources and will clear compliance then
you're good to go.
➢ Later once funding has started, if you breach the contract in some
manner, it could cause the Loan to get delayed. Or stopped. Depending
on the severity of the breach.

39.      Welch's BELOC contains the following additional nine false statements:

➢ The ICA deposit is a "Reserve" deposit.
➢ INBE "has the financial ability and wherewithal to fully fund" millions
of dollars of loans.
➢ INBE will "fully and timely fund each Advance" of the loan.
➢ The BELOC "omit[s] no material facts."
➢ No parties other than INBE and the borrower have any rights.

12

> ➢ The ICA deposit will be "held by a nominated Trustee (attorney) [Messner Reeves]."
> ➢ The ICA deposit "shall be in Trustee's [Messner Reeves'] sole possession and control."
> ➢ If INBE does not fund the loan, "then INBE Capital LLC or one of it's nominated agents will wire return the Deposit Amount to the Borrower promptly."
> ➢ INBE "will step in and reimburse" if the ICA money is not returned.

40.     Welch's BELOC contains at least 20 false statements as set forth above.

41.     Welch's BELOC draft unambiguously and falsely stated that when a borrower enters into a BELOC with INBE, the borrower's ICA deposit is placed into Messner Reeves' COLTAF trust account at Northern Trust Bank and will be "held by a nominated Trustee (attorney) [Messner Reeves]" in Messner Reeves' "sole possession and control."

42.     Welch directed that his BELOC draft, riddled with false statements, be conveyed on his behalf to each borrower seeking a loan by a broker, INBE, or an INBE representative.

43.     After signing Welch's BELOC, which contained the false statements, the borrower wired the ICA deposit funds to Messner Reeves either the same day or shortly thereafter.

44.     The first predicate act, consisting of wire fraud, is as follows.

45.     On April 24, 2023, Welch directed Wright, the Chief Funding Officer of INBE, to make false representations, including the 20 false statements in the BELOC, to Plaintiff Kosher Eats on Welch's behalf.

46.     The false statements in the BELOC were intended to defraud, deceive, and induce Plaintiff Kosher Eats into paying $2 million into Messner Reeves' Northern Trust escrow account, purportedly as part of an $8 million BELOC loan to be provided to Kosher Eats.

47.     On April 24, 2023, Welch directed Wright to transmit Welch's BELOC to Kosher Eats through interstate wires via Zoho Sign, from Wright in Virginia to Kosher Eats in Florida.

48.     The Welch BELOC not only contained at least 20 false statements as discussed above, but was also fundamentally fraudulent, as INBE had no ability or intention of issuing a loan to Plaintiff Kosher Eats.

49.     In the BELOC, Welch falsely represented to Plaintiff Kosher Eats via Wright that Kosher Eats would receive an $8 million BELOC loan from INBE, repayable with interest only at six percent for ten years, without requiring a personal guarantee or real estate collateral.

50.     The purpose of the false representations in the BELOC was to induce the borrower to pay a 25% ICA deposit to Messner Reeves, which, in the case of Kosher Eats, amounted to $2 million.

51.     Having reasonably relied on the 20 false statements in Welch's BELOC and the follow-up emails from INBE on Welch's behalf, Kosher Eats remitted the $2 million ICA deposit into Messner Reeves' trust account on April 27, 2023, following the instructions from Welch through his intermediaries.

52.     Plaintiff Kosher Eats' April 27, 2023 wire crossed state lines from Florida to Colorado under reference #2304271422000011.

53.     The ICA deposits have been stolen, and Plaintiff Kosher Eats never received either the promised loan or the return of its ICA deposit funds.

54.     Each of the first five predicate acts, all consisting of wire fraud, followed a similar pattern for each victim, with Welch falsely presenting the BELOC terms to the borrowers through INBE.

55.     Welch designed and intended the false BELOC terms to induce the borrowers to pay their ICA deposits into Messner Reeves' Northern Trust account.

56.     The chart below reflects the first five predicate acts.

14

Predicate Acts Set I, Acts 1-5: Wire Fraud, Victims' Money into Messner Reeves Escrow Account

| Predicate Act | Statute | Date of BELOC | Date of Wire | Wire Amount | Victim | Receiving Account |
|---|---|---|---|---|---|---|
| 1 | 18 U.S.C. § 1343 | April 24, 2023 | April 27, 2023 | $2,000,000 | Kosher Eats | Messner Reeves Northern Trust COLTAF [redacted] |
| 2 | 18 U.S.C. § 1343 | June 12, 2023 | June 13, 2023 | $700,000 | Emerald | Messner Reeves Northern Trust COLTAF [redacted] |
| 3 | 18 U.S.C. § 1343 | May 9, 2023 | June 22, 2023 | $1,145,000 | MSC | Messner Reeves Northern Trust COLTAF [redacted] |
| 4 | 18 U.S.C. § 1343 | June 21, 2023 | June 29, 2023 | $3,500,000 | Abbson | Messner Reeves Northern Trust COLTAF [redacted] |
| 5 | 18 U.S.C. § 1343 | July 31, 2023 | August 1, 2023 | $325,000 | Konala, LLC ("Konala") | Messner Reeves Northern Trust COLTAF [redacted] |

57. After perpetrating the first set of predicate acts of wire fraud reflected above, Welch then stole the victims' ICA deposits from Messner Reeves' Northern Trust COLTAF trust account pursuant to the second set of predicate acts.

58. By removing the victims' ICA deposits from Messner Reeves' Northern Trust COLTAF account in Colorado, Welch, from Utah, effectuated the interstate transportation of stolen, converted, or fraudulently obtained funds well in excess of $5,000. With fraudulent intent, he transferred these funds across state lines from Colorado to Wyoming, utilizing interstate transportation and wire communications.

Predicate Acts Set II, Acts 6-13: Theft of Victims' Money from Messner Reeves' Escrow Account

| Predicate Act | Statute | Date of Theft | Stolen Amount | Victim | Escrow Account from which Theft Occurred |
|---|---|---|---|---|---|
| 6 | 18 U.S.C. § 2314 | On or after April 27, 2023 | $2,000,000 | Kosher Eats | Messner Reeves Northern Trust COLTAF [redacted] |
| 7 | 18 U.S.C. § 2314 | On or after June 13, 2023 | $700,000 | Emerald | Messner Reeves Northern Trust COLTAF [redacted] |
| 8 | 18 U.S.C. § 2314 | On or after June 22, 2023 | $1,145,000 | MSC | Messner Reeves Northern Trust COLTAF [redacted] |
| 9 | 18 U.S.C. § 2314 | On or after June 29, 2023 | $3,500,000 | Abbson | Messner Reeves Northern Trust COLTAF [redacted] |
| 10 | 18 U.S.C. § 2314 | On or after August 1, 2023 | $325,000 | Konala | Messner Reeves Northern Trust COLTAF [redacted] |
| 11 | 18 U.S.C. § 2314 | On or after April 20, 2023 | $1,000,000 | HomePeople Corporation ("HomePeople") | Messner Reeves Northern Trust COLTAF [redacted] |
| 12 | 18 U.S.C. § 2314 | On or after April 26, 2023 | $700,000 | Master Systems Integrators, LLC ("MSI") | Messner Reeves Northern Trust COLTAF [redacted] |
| 13 | 18 U.S.C. § 2314 | On or after July 7, 2023 | $700,000 | Delaware Valley Automation, LLC ("DVA") | Messner Reeves Northern Trust COLTAF [redacted] |

59.    The following six victims did not receive even the "first tranche" of the BELOC loan, which was supposed to constitute one-third of the total loan amount and be funded within 90 days.

16

| Name | ICA Deposit | Date of ICA deposit | Due date of first tranche | First tranche amount | Total loan amount | Amount of loan funded | ICA Deposit returned |
|---|---|---|---|---|---|---|---|
| Kosher Eats | $2,000,000 | 4/27/2023 | 7/26/2023 | $2,666,667 | $8,000,000 | $0 | $0 |
| Emerald | $700,000 | 6/13/2023 | 9/11/2023 | $933,333 | $2,800,000 | $0 | $0 |
| MSC | $1,145,000 | 6/22/2023 | 9/20/2023 | $1,526,667 | $4,580,000 | $0 | $0 |
| Abbson | $3,500,000 | 6/29/2023 | 9/27/2023 | $4,666,667 | $14,000,000 | $0 | $0 |
| DVA | $700,000 | 7/7/2023 | 10/5/2023 | $933,333 | $2,800,000 | $0 | $0 |
| Konala | $325,000 | 8/1/2023 | 10/30/2023 | $433,333 | $1,300,000 | $0 | $0 |

60.    Since the purported lender, INBE, had no capital to loan, Welch sought to create the illusion that the BELOC loans were being funded by INBE to entice more borrowers and victims. In reality, INBE had no capital and was not funding any loans.

61.    On July 3, 2023, Welch caused Messner Reeves to wire funds to two borrowers. Welch falsely represented these wires as the "first tranche" of a BELOC loan, but the funds did not come from the lender.

62.    The July 3, 2023 wires were part of the scheme, intended to falsely portray that some loans were receiving a first tranche of funding. However, none of the loans were funded by INBE, as INBE never had money to loan.

63.    The additional victims, whose ICA deposits were also stolen and who never received the second or third tranches of their loans, are reflected below.

| Name | ICA Deposit | Date of ICA deposit | Due date of first tranche | First tranche amount | Total loan amount | Purported loan proceeds received (7/3/2023) | ICA Deposit returned |
|---|---|---|---|---|---|---|---|
| HomePeople | $1,000,000 | 4/20/2023 | 7/19/2023 | $1,333,333 | $4,000,000 | $973,000 | $0 |
| MSI | $700,000 | 4/26/2023 | 7/25/2023 | $1,274,000 | $2,800,000 | $1,274,000 | $0 |
| Kosher Eats | $2,000,000 | 4/27/2023 | 7/26/2023 | $2,666,667 | $8,000,000 | $0 | $0 |
| Emerald[1] | $700,000 | 6/13/2023 | 9/11/2023 | $933,333 | $2,800,000 | $0 | $0 |
| MSC | $1,145,000 | 6/22/2023 | 9/20/2023 | $1,526,667 | $4,580,000 | $0 | $0 |
| Abbson | $3,500,000 | 6/29/2023 | 9/27/2023 | $4,666,667 | $14,000,000 | $0 | $0 |
| DVA | $700,000 | 7/7/2023 | 10/5/2023 | $933,333 | $2,800,000 | $0 | $0 |
| Konala | $325,000 | 8/1/2023 | 10/30/2023 | $433,333 | $1,300,000 | $0 | $0 |

64.     All eight borrowers lost their ICA deposits.

65.     Six of the eight borrowers did not receive any tranche of BELOC loan funding.

66.     Of the two borrowers who received a purported first tranche of funding on July 3, 2023, the funds did not come from the lender but from Messner Reeves. Neither of these borrowers received the second tranche of funding, which was due 60 days after the first tranche.

67.     To perpetuate the open-ended nature of the scheme, Welch and his representatives have repeatedly made false assertions that the loans would be funded imminently.

68.     Welch and his representatives continue to operate the enterprise. INBE's website remains publicly available and still contains false information.

69.     Fully aware of INBE's complete lack of capital, Welch continues to seek borrowers to make ICA deposits with Messner Reeves, which Welch intends to steal.

---

[1] Emerald is not a borrower, Emerald is a bridge lender that was damaged as it remitted $700,000 directly to Messner in reliance on false statements that Messner made through INBE to Emerald on June 12, 2023 and which incorporated the corresponding fraudulent BELOC by reference.

**B.** **Welch's Scheme is Ongoing**

70.  To this day, Welch continues to troll for victims pursuant to the ongoing scheme.

71.  INBE's website remains active. https://theinbegroup.com/ (visited September 18, 2024).

72.  On INBE's active public website, borrowers continue to be targeted with the following statements:

Why wait until you exit to achieve a significant capital event?
We DON'T believe capital (liquidity) events should be "reserved" for exits.
At the core of our unique methodologies is the unwavering belief that MOST entrepreneurs are leaving MOST their upside "on the table"!

https://theinbegroup.com/ (visited September 18, 2024).

You can avoid this incredible costly mistake!
Learn how to maximise your capital event opportunities.
Make money when entering deals, during the investment tenure, & (of course) at each exit.

*Id*. (visited September 18, 2024).

With INBE your original principal investment is always safe.
Not only do we ringfence all our funds, we also never fractionalise any of your capital.
Your funds are secured and insured within an audited and SEC registered vehicle.
We take on the risk by using our own collateralized assets for deal structuring and deployment.

https://theinbegroup.com/fund/ (visited September 18, 2024).

73.  Craig Boddington, INBE's CEO and Group Chairman, has an active public LinkedIn profile with numerous posts and 6,077 followers, including 39 new followers within the past two months.

https://www.linkedin.com/in/craigboddington/?trk=public_profile_articles_see_all
(visited September 18, 2024).

74.  INBE maintains an active public LinkedIn profile, holding itself out as "Venture Capital and Private Equity Principals" who are "Unlocking Free-Flowing Liquidity Events

19

Throughout The Entrepreneurial Life-Cycle," with 154 followers, including seven new followers within the past two months.

https://www.linkedin.com/company/inbegroup/people/ (visited September 18, 2024).

75.     Welch's public biography profile remains active on Messner Reeves' website, as Welch promotes himself as "the head of the Messner Reeves Utah office," who is "licensed to practice law in Colorado, New York, and Utah" and "has specialized in handling complex business and commercial transactions worldwide, providing practical 'solutions-oriented' operations and general counsel services to help clients achieve their business goals."

https://messner.com/attorneys/welch/ (visited September 18, 2024).

76.     Welch states that his "practice areas include real estate, finance, international business, lending/banking, tech, hospitality, and sports." *Id*. (visited September 18, 2024).

77.     Accordingly, despite operating the scheme discussed herein, Welch remains the head of Messner Reeves' Utah office, and claims to have specialized experience in handling complex business transactions, and his practice areas include finance and lending/banking.

78.     On his biography page, Welch proclaims the following "most recent achievements."

- Negotiated and closed a 10-figure financing deal for an entertainment and hospitality resort

- Negotiated and acquired $100 million of bonds in the oil and gas industry

*Id*. (visited September 18, 2024).

79.     Welch's representations above are inaccurate and misleading.

80.     Welch also promotes himself on other biography websites, such as www.torbenwelch.com, in which Welch states that he is "representing clients in global legal matters in multiple industries - Sports, Real Estate, Tech, Banking, etc."

https://www.torbenwelch.com/ (visited September 18, 2024).

81.     On another website, Welch promotes himself and states that clients can expect
"[t]he highest level of professional integrity."

> We figured out a long time ago that clients want only the best!
>   • Great quality • Great service • Great value • The highest level of professional
> integrity
> And that's what we deliver—effective legal counsel with a quick response and
> professional integrity in all we do.

https://irglobal.com/advisor/torben-welch/ (visited September 18, 2024).

82.     Despite Welch's false public claim of maintaining the "highest level of professional
integrity," he refuses to provide honest answers, or any answers at all, to the victims of the
$10,070,000 stolen from Messner Reeves' trust account.

### C.     **The Messner General Partnership**

83.     The following allegations apply to all relevant times between January 1, 2021 and
the present.

84.     None of the 77 General Partnership Defendants are partners in Messner Reeves,
and there is no overlap between the 77 General Partnership Defendants and the 11 separate and
distinct Messner Reeves partners.

85.     The General Partnership Defendants sought to benefit and profit from using the title
"partner" in conducting a joint venture law firm for profit. To this end, through words and conduct,
they formed their own unincorporated general partnership (the "Messner General Partnership") to
operate the law firm.

86.     The Messner General Partnership is an association of 77 individuals carrying on a
joint venture law practice as co-owners for profit.

87.     Through the Messner General Partnership, the General Partnership Defendants presented themselves to the public, to Plaintiffs, and to clients as "partners" of a law firm, thereby confirming the Messner General Partnership's existence through their words and conduct.

88.     The General Partnership Defendants consistently and repeatedly referred to themselves as "partners" to the public and to Plaintiffs, with each contributing to the law firm's operation and management pursuant to the Messner General Partnership.

89.     The General Partnership Defendants shared office space, operated within organized practice groups, pooled resources for administrative support, collectively used electronic file systems, and divided responsibilities among themselves for marketing, client matters, case management, and carrying on the functions of a law firm. Additionally, they contributed a portion of the revenue received to a central account to cover shared expenses, including rent, insurance, utilities, and other fixed costs, all without a formal written partnership agreement among them.

90.     The General Partnership Defendants jointly decided on new and existing client engagements, work allocation, and revenue and profit division. They met regularly to discuss the Messner General Partnership's business strategy, engagements, cases, management, administration, billing, and financial matters.

91.     In marketing materials, email signatures, on the Messner Reeves firm's website, and in press releases published on the website, the General Partnership Defendants consistently referred to themselves and each other as "partners." They issued dozens of press releases and published a multitude of news articles about existing partners and the addition of new "partners."

92.     Although there was no formal written partnership agreement, the General Partnership Defendants' repeated use of the term "partner" and their conduct, including shared decision-making, revenue-sharing, and public representations, established the formation,

22

operation, and management of the unincorporated Messner General Partnership, which operated concurrently and distinctly alongside Messner Reeves.

93.    As general partners in the Messner General Partnership, each General Partnership Defendant is jointly and severally liable for all partnership obligations of one another and of the Messner General Partnership.

94.    Accordingly, all General Partnership Defendants are jointly and severally liable for all obligations incurred by any General Partnership Defendant, including but not limited to Torben Welch, and all obligations incurred by the Messner General Partnership.

95.    Messner Reeves was aware of the Messner General Partnership and the General Partnership Defendants' conduct in referring to themselves publicly as partners and operating the joint venture business through an unincorporated general partnership.

96.    Messner Reeves employed and profited from the actions of the General Partnership Defendants and Messner Reeves is vicariously liable for all obligations of the General Partnership Defendants and the Messner General Partnership which are set forth herein.

97.    As discussed herein, Defendants maliciously perpetrated their misconduct with the intent to harm Plaintiffs. Their actions were willful, wanton, and demonstrative of a reckless disregard for Plaintiffs' rights. Defendants' conduct was intentionally fraudulent and part of an intricate scheme of deceit and misrepresentations. Furthermore, Defendants' oppressive actions are an appalling abuse of power by attorneys bound by an oath to behave properly and in a manner consistent with the Rules of Professional Conduct.

98.    Punitive damages are appropriately awarded given the scale of crimes committed and the clear and convincing evidence of Defendants' willful, malicious, reckless, and intentionally fraudulent conduct.

23

Case No. 1:26-cv-01707-KAS    Document 36-2    filed 06/25/26    USDC Colorado    pg
Case 2:24-cv-00520-DBP   Document 153   Filed 09/18/24   PageID.458   Page 24 of 44
24 of 44

## COUNT ONE

## RACKETEER INFLUENCED & CORRUPT ORGANIZATIONS ACT

## 18 U.S. CODE § 1962(c)

**(Against Defendants Torben Welch, Meyer, Harden, Finch, David Reeves, Tietgen, Alberti, Bailey, Bartels, Beltz, Blasingame, Boon, Bromley, Carranza, Carter, Carucci, Cavanagh, Chartrand, Cohen, Cronin, Crum, Deatherage, Deenihan, Dodd, Dolmage, Drake, Ertmer, Farr, Bryne Fletcher, Gemmell, George, Gilbertson, Gray, Hawranek, Hollins, Huff, Humphrey, Jedrzejek, Joyce, Kashefipour, Keller, Klett, Knauss, Kratsas, Martinez, Bryant Messner, Mitchell, Monroe, Simone Montoya, Bruce Montoya, Mowry, Mundy, Nguyen, Otto, Owens, Pardo de Zela, Perretta, Pierce, Randall, Reice, Royval, Salg, Schwartz, Shah, Sitrick, Smith, Soleimani, Stern, Stevens, Stodden, Sullivan, Thornton, Warthen, Andrew Welch, Wilson, Wolanske, and Zimmerman)**

99.    Plaintiffs incorporate by reference the allegations of Paragraphs 1 to 98 as if fully set forth herein.

100.    As described herein, Torben Welch's scheme is executed through the repeated commission of two federal crimes, wire fraud, codified at 18 U.S.C. § 1343 and made a form of "racketeering activity" by 18 U.S.C §1961(1)(B), and the National Stolen Property Act, codified at 18 U.S.C. § 2314 and made a form of "racketeering activity" by 18 U.S.C. §1961(1)(B).

101.    Welch is a general partner in the Messner General Partnership, and he is the head of Messner Reeves' Utah office who acted at all times within his authority in the Messner General Partnership. The Messner General Partnership is a RICO "enterprise" pursuant to 18 U.S.C. §1961(4). Welch is part of the law firm's management and was able to conduct the scheme through the auspices of the law firm.

102.    The Messner General Partnership affects interstate commerce because it has offices and clients in several states.

103.    The scheme entailed the commission of two forms of "racketeering activity," detailed above.  The racketeering acts are ongoing, as new borrower/victims are being sought.  The

24

sham lender's website is still active, replete with false information which is designed to continue to attract new victims. Welch maintains several online profiles highlighting his purported experience in finance, lending, and banking. The scheme will not stop without judicial intervention and thus constitutes an "open" pattern of racketeering activity pursuant to 18 U.S.C. §1961(5).

104.    Section 1962(c) of RICO makes it a federal crime for "any person employed by or associated with any enterprise… to conduct or participate… in the conduct of such enterprise's affairs through a pattern of racketeering activity…"

105.    Accordingly, Welch has violated 18 U.S.C. §1962(c).

106.    Additionally, Welch's 76 law firm partners, who are the General Partnership Defendants—including both current partners and those who were partners of the Messner General Partnership during the relevant period of the racketeering—are vicariously liable for Welch's RICO violations under Colorado partnership law, C.R.S.A. §§ 7-64-305, 7-64-306, 7-60-109, 7-60-113, 7-60-114, 7-60-115, et seq. This vicarious liability applies to all individual Defendants, except Defendant Brigham, whose role was that of an associate attorney actively assisting Welch in carrying out the scheme. Accordingly, each partner is sued individually for violating 18 U.S.C. § 1962(c).

107.    Vicarious liability for Defendant Welch's actions attaches to Defendants Meyer, Harden, Finch, David Reeves, Tietgen, Alberti, Bailey, Bartels, Beltz, Blasingame, Boon, Bromley, Carranza, Carter, Carucci, Cavanagh, Chartrand, Cohen, Cronin, Crum, Deatherage, Deenihan, Dodd, Dolmage, Drake, Ertmer, Farr, Bryne Fletcher, Gemmell, George, Gilbertson, Gray, Hawranek, Hollins, Huff, Humphrey, Jedrzejek, Joyce, Kashefipour, Keller, Klett, Knauss, Kratsas, Martinez, Bryant Messner, Mitchell, Monroe, Simone Montoya, Bruce Montoya, Mowry, Mundy, Nguyen, Otto, Owens, Pardo de Zela, Perretta, Pierce, Randall, Reice, Royval, Salg,

25

Schwartz, Shah, Sitrick, Smith, Soleimani, Stern, Stevens, Stodden, Sullivan, Thornton, Warthen, Andrew Welch, Wilson, Wolanske, and Zimmerman, as those Defendants are, or were at the relevant time during the racketeering, law partners and general partners of Welch pursuant to the Messner General Partnership. Welch perpetrated the predicate acts and has engaged in the continuing wrongs in the ordinary course of the Messner General Partnership's business and as a normal aspect of the Messner General Partnership's business practice.

108.    Pursuant to 18 U.S.C. § 1964(c), any person injured in his business or property by reason of a violation of section 1962 of this chapter may sue therefor in any appropriate United States district court and shall recover threefold the damages he sustains and the cost of the suit, including a reasonable attorney's fee.

109.    As a result of the wrongful conduct set forth herein, Plaintiffs were damaged and Plaintiffs sustained more than $10,000,000 in principal damages, which are trebled to over $30,000,000.

110.    WHEREFORE, Plaintiffs demand that judgment be entered against the 77 General Partnership Defendants, jointly and severally, pursuant to 18 U.S.C. §1964(c), for the amount of their damages, trebled, plus attorney's fees, costs, and pre-judgment interest. Plaintiffs also ask for preliminary and permanent injunctions prohibiting these Defendants from continuing the scheme. Plaintiffs also request a jury trial.

<u>**COUNT TWO**</u>

**CONSPIRACY TO VIOLATE THE
RACKETEER INFLUENCED & CORRUPT ORGANIZATIONS ACT**

**18 U.S. CODE § 1962(d)**

**(Against Defendants Torben Welch and Jake Brigham)**

111.    Plaintiffs incorporate by reference the allegations of Paragraphs 1 to 98 as if fully set forth herein.

112.    From July 2022 through January 2024, Brigham was an associate attorney employed by the Messner Reeves law firm in its Utah office, reporting to Welch as Welch was Brigham's supervising attorney on a daily basis.

113.    Brigham was aware of the essential nature and scope of the scheme described herein, Brigham intended to participate in it, and Brigham substantively participated in it.

114.    Brigham engaged in overt acts in furtherance of his conspiracy with Welch and with Welch's assent.

115.    Brigham exchanged emails with and directly spoke with borrowers in connection with Messner Reeves' handling of ICA deposits pursuant to the BELOC loans and in furtherance of Welch's usage of the Enterprise to commit crimes.

116.    Brigham directly corresponded by telephone and email with one of the brokers who provided Welch's BELOC to multiple borrowers, including those who provided ICA deposits.

117.    Brigham was copied on Welch's email correspondence with multiple brokers who provided Welch's BELOC to multiple borrowers, including those who provided ICA deposits.

118.    Brigham was very actively involved with Welch and had deep knowledge of Welch's false statements in connection with Welch's related endeavor regarding bonds and a

sports arena in Las Vegas. Brigham made false statements in public on Welch's behalf in that context.

119.   As a result of the wrongful conduct set forth herein, Plaintiffs were damaged and sustained more than $10,000,000 in principal damages, which are trebled to over $30,000,000.

120.   WHEREFORE, Plaintiffs demand that judgment be entered against Defendants Welch and Brigham, jointly and severally, pursuant to 18 U.S.C. §1964(c), for the amount of their damages, trebled, plus attorney's fees, costs, and pre-judgment interest. Plaintiffs also ask for preliminary and permanent injunctions prohibiting Defendants from continuing the scheme. Plaintiffs also request a jury trial.

## COUNT THREE

### CONVERSION

### (Against Defendant Messner Reeves)

121.   Plaintiffs incorporate by reference the allegations of Paragraphs 1 to 98 as if fully set forth herein.

122.   A person commits conversion through a willful interference with another person's property, done without lawful justification, by which the person entitled to the property is deprived of its use and possession, and that party is entitled to immediate possession of the property at the time of the alleged conversion.

123.   As set forth herein, Messner Reeves willfully interfered with Plaintiffs' ICA deposit funds without lawful justification.

124.   At all times, Plaintiffs were entitled to the property, their ICA deposit funds, and Plaintiffs were deprived of its use and possession.

125.    At the time of the conversion, Plaintiffs were entitled to immediate possession of their ICA deposit funds.

126.    As a result of the conversion perpetrated by Messner Reeves, Plaintiffs sustained incidental and consequential damages in excess of $10,000,000.

127.    In addition, as an employer, Messner Reeves is vicariously liable for damages arising from the acts and omissions of its employees and agents, described and identified herein, inclusive of Welch and the 76 other General Partnership Defendants, because such tortious conduct was committed in the ordinary course of the business and within the scope of the employee's or agent's employment.

128.    Messner Reeves' conduct, carried out in the ordinary course of business, was willful, malicious, and intentionally fraudulent, demonstrating a knowing and reckless indifference to Plaintiffs' rights, thereby entitling Plaintiffs to punitive damages in an amount to be determined by the trier of fact.

129.    WHEREFORE, Plaintiffs demand that judgment be entered against Defendant Messner Reeves.

## COUNT FOUR

### CONVERSION

**(Against Defendants Torben Welch, Meyer, Harden, Finch, David Reeves, Tietgen, Alberti, Bailey, Bartels, Beltz, Blasingame, Boon, Bromley, Carranza, Carter, Carucci, Cavanagh, Chartrand, Cohen, Cronin, Crum, Deatherage, Deenihan, Dodd, Dolmage, Drake, Ertmer, Farr, Bryne Fletcher, Gemmell, George, Gilbertson, Gray, Hawranek, Hollins, Huff, Humphrey, Jedrzejek, Joyce, Kashefipour, Keller, Klett, Knauss, Kratsas, Martinez, Bryant Messner, Mitchell, Monroe, Simone Montoya, Bruce Montoya, Mowry, Mundy, Nguyen, Otto, Owens, Pardo de Zela, Perretta, Pierce, Randall, Reice, Royval, Salg, Schwartz, Shah, Sitrick, Smith, Soleimani, Stern, Stevens, Stodden, Sullivan, Thornton, Warthen, Andrew Welch, Wilson, Wolanske, Zimmerman, Messner Reeves, and Messner General Partnership)**

130.    Plaintiffs incorporate by reference the allegations of Paragraphs 1 to 98 as if fully set forth herein.

131.    A person commits conversion through a willful interference with another person's property, done without lawful justification, by which the person entitled to the property is deprived of its use and possession, and that party is entitled to immediate possession of the property at the time of the alleged conversion.

132.    As set forth herein, Welch willfully interfered with Plaintiffs' ICA deposit funds without lawful justification.

133.    At all times, Plaintiffs were entitled to the property, their ICA deposit funds, and Plaintiffs were deprived of its use and possession.

134.    At the time of the conversion, Plaintiffs were entitled to immediate possession of their ICA deposit funds.

135.    As a result of the conversion perpetrated by Welch, Plaintiffs sustained incidental and consequential damages in excess of $10,000,000.

30

136.    At all relevant times hereto, Welch acted in his capacity as a general partner of the Messner General Partnership and Welch's actions and omissions were undertaken in the ordinary course of business and within the scope of the Messner General Partnership.

137.    As partners in the Messner General Partnership, each General Partnership Defendant is jointly and severally liable for all partnership obligations of one another and of the Messner General Partnership.

138.    As partners in the Messner General Partnership, each General Partnership Defendant is jointly and severally liable for all partnership obligations arising from the misapplication of funds by one another and by the partnership.

139.    Accordingly, all General Partnership Defendants are jointly and severally liable for all obligations incurred by any General Partnership Defendant, including but not limited to Torben Welch, and all obligations incurred by the Messner General Partnership.

140.    Pursuant to C.R.S.A. §§ 7-64-305, 7-64-306, 7-60-109, 7-60-113, 7-60-114, 7-60-115, et seq., the Messner General Partnership and the General Partnership Defendants are jointly and severally and vicariously liable for Welch's wrongful acts and for everything chargeable under the partnership under §§ C.R.S.A. §§ 7-64-305, 7-64-306, 7-60-109, 7-60-113, 7-60-114, 7-60-115, et seq.

141.    Messner Reeves was aware of the Messner General Partnership and the General Partnership Defendants' conduct in referring to themselves publicly as partners and operating the joint venture business through an unincorporated general partnership.

142.    Messner Reeves employed and profited from the actions of the General Partnership Defendants and Messner Reeves is vicariously liable for all obligations of the General Partnership Defendants and the Messner General Partnership which are set forth herein.

143.    In addition, as an employer, Messner Reeves is vicariously liable for damages arising from the acts and omissions of its employees and agents, described and identified herein, inclusive of Welch and the 76 other General Partnership Defendants because such tortious conduct was committed in the ordinary course of the business and within the scope of the employee's or agent's employment.

144.    Welch's conduct, carried out in the ordinary course of business, was willful, malicious, and intentionally fraudulent, demonstrating a knowing and reckless indifference to Plaintiffs' rights, thereby entitling Plaintiffs to punitive damages in an amount to be determined by the trier of fact.

145.    WHEREFORE, Plaintiffs demand that judgment be entered against all Defendants, jointly and severally, except Brigham.

## COUNT FIVE

## NEGLIGENCE

### (Against Defendant Messner Reeves)

146.    Plaintiffs incorporate by reference the allegations of Paragraphs 1 to 98 as if fully set forth herein.

147.    Negligence is established when the defendant owed the plaintiff a duty, the defendant breached that duty, the breach of the duty was the proximate cause of the plaintiff's injury, and the plaintiff in fact suffered injuries or damages.

148.    In the escrow context, an escrow holder is obligated to use a high standard of skill, care, and diligence in carrying out its duties.

149.    An escrow holder is obligated to preserve and protect the property from loss, theft, or damage, and to disburse funds appropriately.

150.    A fiduciary is held to a high standard of care in managing another's money or property.

151.    An escrow holder is impliedly obligated to undertake all obligations normally undertaken by an escrow holder unless expressly excluded under the escrow agreement, and the escrow holder must use ordinary skill and diligence in carrying out these tasks.

152.    If the escrow holder negligently breaches its duty of care pursuant to the escrow agreement, the escrow holder is liable for any foreseeable loss arising from its negligence.

153.    The loss of Plaintiffs' ICA deposit funds was the foreseeable result of Messner Reeves' failure to hold Plaintiffs' money in its trust account in Messner Reeves' "sole possession and control."

154.    Even if the escrow holder's liability is not the sole cause of the damages suffered, the escrow holder may still be held liable for negligence if the escrow holder's breach was a substantial factor in the harm experienced. Messner Reeves' negligence was a substantial factor in the harm that Plaintiff suffered.

155.    Messner Reeves had a duty of care, *inter alia*, to "hold" Plaintiffs' ICA deposit funds in Messner Reeves' "sole possession and control."

156.    Messner Reeves breached the duty of care by failing to "hold" Plaintiffs' ICA deposit funds in Messner Reeves' "sole possession and control."

157.    Instead of holding Plaintiffs' ICA deposit funds in Messner Reeves' sole possession and control, Welch and Messner Reeves transferred Plaintiffs' money out of Messner Reeves' sole possession and control in an unknown and unauthorized manner.

158.    Welch and Messner Reeves' breach caused the damages that Plaintiffs sustained.

159.     As a result of Messner Reeves' negligence, Plaintiffs sustained incidental and consequential damages in excess of $10,000,000.

160.     Messner Reeves' conduct, carried out in the ordinary course of business, was willful, malicious, and intentionally fraudulent, demonstrating a knowing and reckless indifference to Plaintiffs' rights, thereby entitling Plaintiffs to punitive damages in an amount to be determined by the trier of fact.

161.     WHEREFORE, Plaintiffs demand that judgment be entered against Defendant Messner Reeves.

## COUNT SIX

### NEGLIGENCE

**(Against Defendants Torben Welch, Meyer, Harden, Finch, David Reeves, Tietgen, Alberti, Bailey, Bartels, Beltz, Blasingame, Boon, Bromley, Carranza, Carter, Carucci, Cavanagh, Chartrand, Cohen, Cronin, Crum, Deatherage, Deenihan, Dodd, Dolmage, Drake, Ertmer, Farr, Bryne Fletcher, Gemmell, George, Gilbertson, Gray, Hawranek, Hollins, Huff, Humphrey, Jedrzejek, Joyce, Kashefipour, Keller, Klett, Knauss, Kratsas, Martinez, Bryant Messner, Mitchell, Monroe, Simone Montoya, Bruce Montoya, Mowry, Mundy, Nguyen, Otto, Owens, Pardo de Zela, Perretta, Pierce, Randall, Reice, Royval, Salg, Schwartz, Shah, Sitrick, Smith, Soleimani, Stern, Stevens, Stodden, Sullivan, Thornton, Warthen, Andrew Welch, Wilson, Wolanske, Zimmerman, Messner Reeves, and Messner General Partnership)**

162.     Plaintiffs incorporate by reference the allegations of Paragraphs 1 to 98 as if fully set forth herein.

163.     Negligence is established when the defendant owed the plaintiff a duty, the defendant breached that duty, the breach of the duty was the proximate cause of the plaintiff's injury, and the plaintiff in fact suffered injuries or damages.

164.     As the person directly interacting with Plaintiffs and in charge of the engagement relative to Plaintiffs' ICA deposit funds, Welch owed Plaintiffs a duty to act reasonably under the

34

circumstances by ensuring that Messner Reeves held Plaintiffs' money in Messner Reeves' trust account and in Messner Reeves' "sole possession and control."

165.    At all relevant times hereto, Welch acted in his capacity as a general partner of the Messner General Partnership and Welch's actions and omissions were undertaken in the ordinary course of business and within the scope of the Messner General Partnership.

166.    Welch breached his duty to Plaintiffs, as the person in charge of the engagement, by failing to ensure that Plaintiffs' ICA deposit funds were held in Messner Reeves' "sole possession and control."

167.    Welch breached his duty to Plaintiffs, as the person in charge of the engagement, because instead of holding Plaintiffs' ICA deposit funds in Messner Reeves' sole possession and control, Welch effectuated the transfer of Plaintiffs' money out of Messner Reeves' sole possession and control in an unknown and unauthorized manner.

168.    Welch's breach caused the damages that Plaintiffs sustained.

169.    As a result of Welch's negligence, Plaintiffs sustained incidental and consequential damages in excess of $10,000,000.

170.    As partners in the Messner General Partnership, each General Partnership Defendant is jointly and severally liable for all partnership obligations of one another and of the Messner General Partnership.

171.    Accordingly, all General Partnership Defendants are jointly and severally liable for all obligations incurred by any General Partnership Defendant, including but not limited to Torben Welch, and all obligations incurred by the Messner General Partnership.

172.    Pursuant to C.R.S.A. §§ 7-64-305, 7-64-306, 7-60-109, 7-60-113, 7-60-114, 7-60-115, et seq., the Messner General Partnership and the General Partnership Defendants are jointly

and severally and vicariously liable for Welch's wrongful acts and for everything chargeable under the partnership under §§ C.R.S.A. §§ 7-64-305, 7-64-306, 7-60-109, 7-60-113, 7-60-114, 7-60-115, et seq.

173.    Messner Reeves was aware of the Messner General Partnership and the General Partnership Defendants' conduct in referring to themselves publicly as partners and operating the joint venture business through an unincorporated general partnership.

174.    Messner Reeves employed and profited from the actions of the General Partnership Defendants and Messner Reeves is vicariously liable for all obligations of the General Partnership Defendants and the Messner General Partnership which are set forth herein.

175.    In addition, as an employer, Messner Reeves is vicariously liable for damages arising from the acts and omissions of its employees and agents, described and identified herein, inclusive of Welch and the 76 other General Partnership Defendants because such tortious conduct was committed in the ordinary course of the business and within the scope of the employee's or agent's employment.

176.    Welch's conduct, carried out in the ordinary course of business, was willful, malicious, and intentionally fraudulent, demonstrating a knowing and reckless indifference to Plaintiffs' rights, thereby entitling Plaintiffs to punitive damages in an amount to be determined by the trier of fact.

177.    WHEREFORE, Plaintiffs demand that judgment be entered against all Defendants, jointly and severally, except Brigham.

## COUNT SEVEN

## BREACH OF FIDUCIARY DUTY

### (Against Defendant Messner Reeves)

178.    Plaintiffs incorporate by reference the allegations of Paragraphs 1 to 98 as if fully set forth herein.

179.    An escrow agent owes fiduciary duties of good faith, loyalty, due care, and disclosure to both parties in a transaction as the agent of both parties.

180.    Among those fiduciary duties, the escrow agent is obligated to preserve and protect the property from loss, theft, or damage, and to disburse funds appropriately.

181.    A fiduciary is held to a high standard of care in managing another's money or property.

182.    Messner Reeves was an escrow holder, attorney, and trustee, and Messner Reeves had a fiduciary relationship with Plaintiffs.

183.    Messner Reeves was obligated to act with the utmost good faith for the benefit of Plaintiffs, given that confidence was reposed in Messner Reeves and Messner Reeves voluntarily accepted and assumed that confidence.

184.    Messner Reeves had a fiduciary duty of care to ensure that it adhered to the instruction to "hold" Plaintiffs' ICA deposit funds in Messner Reeves' "sole possession and control."

185.    Messner Reeves also had a fiduciary duty to disclose to Plaintiffs if it intended to deviate from the instruction to "hold" Plaintiffs' ICA deposit funds in Messner Reeves' "sole possession and control."

37

186.   Messner Reeves breached the fiduciary duty of care by failing to adhere to the instruction to "hold" Plaintiffs' ICA deposit funds in Messner Reeves' "sole possession and control."

187.   Messner Reeves breached the fiduciary duty to disclose to Plaintiffs if it intended to deviate from the instruction to "hold" Plaintiffs' ICA deposit funds in Messner Reeves' "sole possession and control."

188.   As a result of Messner Reeves' breaches of its fiduciary duties, Plaintiffs sustained incidental and consequential damages in excess of $10,000,000.

189.   As an employer, Messner Reeves is vicariously liable for compensatory and punitive damages arising from the acts and omissions of its employees and agents, such as Welch, described and identified herein, because such tortious conduct was committed in the course of Messner Reeves' business and within the scope of the employee's or agent's employment.

190.   Messner Reeves' conduct, carried out in the ordinary course of business, was willful, malicious, and intentionally fraudulent, demonstrating a knowing and reckless indifference to Plaintiffs' rights, thereby entitling Plaintiffs to punitive damages in an amount to be determined by the trier of fact.

191.   WHEREFORE, Plaintiffs demand that judgment be entered against Defendant Messner Reeves.

## COUNT EIGHT

### BREACH OF FIDUCIARY DUTY

**(Against Defendants Torben Welch, Meyer, Harden, Finch, David Reeves, Tietgen, Alberti, Bailey, Bartels, Beltz, Blasingame, Boon, Bromley, Carranza, Carter, Carucci, Cavanagh, Chartrand, Cohen, Cronin, Crum, Deatherage, Deenihan, Dodd, Dolmage, Drake, Ertmer, Farr, Bryne Fletcher, Gemmell, George, Gilbertson, Gray, Hawranek, Hollins, Huff, Humphrey, Jedrzejek, Joyce, Kashefipour, Keller, Klett, Knauss, Kratsas, Martinez, Bryant Messner, Mitchell, Monroe, Simone Montoya, Bruce Montoya, Mowry, Mundy, Nguyen, Otto, Owens, Pardo de Zela, Perretta, Pierce, Randall, Reice, Royval, Salg, Schwartz, Shah, Sitrick, Smith, Soleimani, Stern, Stevens, Stodden, Sullivan, Thornton, Warthen, Andrew Welch, Wilson, Wolanske, Zimmerman, Messner Reeves, and Messner General Partnership)**

192.    Plaintiffs incorporate by reference the allegations of Paragraphs 1 to 98 as if fully set forth herein.

193.    An escrow agent owes fiduciary duties of good faith, loyalty, due care, and disclosure to both parties in a transaction as the agent of both parties.

194.    Among those fiduciary duties, the escrow agent is obligated to preserve and protect the property from loss, theft, or damage, and to disburse funds appropriately.

195.    A fiduciary is held to a high standard of care in managing another's money or property.

196.    Messner Reeves was an escrow holder, attorney, trustee, and had a fiduciary relationship with Plaintiffs.

197.    Messner Reeves was obligated to act with the utmost good faith for the benefit of Plaintiffs, given that confidence was reposed in Messner Reeves and Messner Reeves voluntarily accepted and assumed that confidence.

198.    Messner Reeves had a fiduciary duty of care to ensure that it adhered to the instruction to "hold" Plaintiffs' ICA deposit funds in Messner Reeves' "sole possession and control."

199.    Messner Reeves also had a fiduciary duty to disclose to Plaintiffs if it intended to deviate from the instruction to "hold" Plaintiffs' ICA deposit funds in Messner Reeves' "sole possession and control."

200.    As the person directly interacting with Plaintiffs and in charge of the engagement relative to Plaintiffs' ICA deposit funds, Welch owed Plaintiffs the same fiduciary duties as Messner Reeves.

201.    At all relevant times hereto, Welch acted in his capacity as a general partner of the Messner General Partnership and Welch's actions and omissions were undertaken in the ordinary course of business and within the scope of the Messner General Partnership.

202.    Reeves breached his duty to Plaintiffs, as the person in charge of the engagement, by failing to adhere to the instruction to "hold" Plaintiffs' ICA deposit funds in Messner Reeves' "sole possession and control."

203.    Reeves breached his duty to Plaintiffs, as the person in charge of the engagement, by failing to disclose to Plaintiffs any intent to deviate from the instruction to "hold" Plaintiffs' ICA deposit funds in Messner Reeves' "sole possession and control."

204.    Reeves breached his duty to Plaintiffs, as the person in charge of the engagement, because instead of holding Plaintiffs' ICA deposit funds in Messner Reeves' sole possession and control, Welch effectuated the transfer of Plaintiffs' money out of Messner Reeves' sole possession and control in an unknown and unauthorized manner.

205.    Welch's breach caused the damages that Plaintiffs sustained.

206.    As a result of Welch's breaches of fiduciary duty, Plaintiffs sustained incidental and consequential damages in excess of $10,000,000.

207.     As partners in the Messner General Partnership, each General Partnership Defendant is jointly and severally liable for all partnership obligations of one another and of the Messner General Partnership.

208.     Accordingly, all General Partnership Defendants are jointly and severally liable for all obligations incurred by any General Partnership Defendant, including but not limited to Torben Welch, and all obligations incurred by the Messner General Partnership.

209.     Messner Reeves was aware of the Messner General Partnership and the General Partnership Defendants' conduct in referring to themselves publicly as partners and operating the joint venture business through an unincorporated general partnership.

210.     Messner Reeves employed and profited from the actions of the General Partnership Defendants and Messner Reeves is vicariously liable for all obligations of the General Partnership Defendants and the Messner General Partnership which are set forth herein.

211.     Pursuant to C.R.S.A. §§ 7-64-305, 7-64-306, 7-60-109, 7-60-113, 7-60-114, 7-60-115, et seq., the Messner General Partnership and the General Partnership Defendants are jointly and severally and vicariously liable for Welch's wrongful acts and for everything chargeable under the partnership under §§ C.R.S.A. §§ 7-64-305, 7-64-306, 7-60-109, 7-60-113, 7-60-114, 7-60-115, et seq.

212.     In addition, as an employer, Messner Reeves is vicariously liable for damages arising from the acts and omissions of its employees and agents, described and identified herein, inclusive of Welch and the 76 other General Partnership Defendants because such tortious conduct was committed in the ordinary course of the business and within the scope of the employee's or agent's employment.

41

213.    Welch's conduct, carried out in the ordinary course of business, was willful, malicious, and intentionally fraudulent, demonstrating a knowing and reckless indifference to Plaintiffs' rights, thereby entitling Plaintiffs to punitive damages in an amount to be determined by the trier of fact.

214.    WHEREFORE, Plaintiffs demand that judgment be entered against all Defendants, jointly and severally, except Brigham.

WHEREFORE, Plaintiff prays that this Court enter a judgment against Defendants, jointly and severally, as follows:

As to Count I, a money judgment, jointly and severally, against Defendants Torben Welch, Meyer, Harden, Finch, David Reeves, Tietgen, Alberti, Bailey, Bartels, Beltz, Blasingame, Boon, Bromley, Carranza, Carter, Carucci, Cavanagh, Chartrand, Cohen, Cronin, Crum, Deatherage, Deenihan, Dodd, Dolmage, Drake, Ertmer, Farr, Bryne Fletcher, Gemmell, George, Gilbertson, Gray, Hawranek, Hollins, Huff, Humphrey, Jedrzejek, Joyce, Kashefipour, Keller, Klett, Knauss, Kratsas, Martinez, Bryant Messner, Mitchell, Monroe, Simone Montoya, Bruce Montoya, Mowry, Mundy, Nguyen, Otto, Owens, Pardo de Zela, Perretta, Pierce, Randall, Reice, Royval, Salg, Schwartz, Shah, Sitrick, Smith, Soleimani, Stern, Stevens, Stodden, Sullivan, Thornton, Warthen, Andrew Welch, Wilson, Wolanske, and Zimmerman, in the amount of:

    A.    Compensatory damages according to proof in the amount of at least $10,000,000, trebled pursuant to 18 U.S.C. § 1964(c) to at least $30,000,000;

    B.    Reasonable attorneys' fees;

    C.    Costs;

    D.    Preliminary and permanent injunctions prohibiting Defendants from continuing the scheme; and

    E.    Such other and further relief as the Court may deem just and proper.

As to Count II, a money judgment, jointly and severally, against Defendants Torben Welch and Jake Brigham, in the amount of:

    A.    Compensatory damages according to proof in the amount of at least $10,000,000, trebled pursuant to 18 U.S.C. § 1964(c) to at least $30,000,000;

    B.    Reasonable attorneys' fees;

    C.    Costs;

Case No. 1:26-cv-01707-KAS   Document 36-2   filed 06/25/26   USDC Colorado   pg
Case 2:24-cv-00520-DBP   Document 153   Filed 09/18/24   PageID.477   Page 43 of 44
43 of 44

> D. Preliminary and permanent injunctions prohibiting Defendants from continuing the scheme; and
>
> E. Such other and further relief as the Court may deem just and proper.

As to Counts III, V, and VII, a money judgment against Messner Reeves in the amount of:

> A. Compensatory damages according to proof in the amount of at least $10,000,000;
>
> B. Punitive damages in an amount to be determined by the trier of fact;
>
> C. Reasonable attorneys' fees;
>
> D. Costs; and
>
> E. Such other and further relief as the Court may deem just and proper.

As to Counts IV, VI, and VIII, a money judgment, jointly and severally, against Defendants Torben Welch, Meyer, Harden, Finch, David Reeves, Tietgen, Alberti, Bailey, Bartels, Beltz, Blasingame, Boon, Bromley, Carranza, Carter, Carucci, Cavanagh, Chartrand, Cohen, Cronin, Crum, Deatherage, Deenihan, Dodd, Dolmage, Drake, Ertmer, Farr, Bryne Fletcher, Gemmell, George, Gilbertson, Gray, Hawranek, Hollins, Huff, Humphrey, Jedrzejek, Joyce, Kashefipour, Keller, Klett, Knauss, Kratsas, Martinez, Bryant Messner, Mitchell, Monroe, Simone Montoya, Bruce Montoya, Mowry, Mundy, Nguyen, Otto, Owens, Pardo de Zela, Perretta, Pierce, Randall, Reice, Royval, Salg, Schwartz, Shah, Sitrick, Smith, Soleimani, Stern, Stevens, Stodden, Sullivan, Thornton, Warthen, Andrew Welch, Wilson, Wolanske, Zimmerman, Messner Reeves, and the Messner General Partnership, in the amount of:

> A. Compensatory damages according to proof in the amount of at least $10,000,000;
>
> B. Punitive damages in an amount to be determined by the trier of fact;
>
> C. Reasonable attorneys' fees;
>
> D. Costs; and
>
> E. Such other and further relief as the Court may deem just and proper.

Respectfully submitted,

CHRISTIANSEN LAW, PLLC

 */s/ Stephen K. Christiansen*
Stephen K. Christiansen

CHASE LAW & ASSOCIATES, P.A.

 */s/ Kenneth E. Chase*
Kenneth E. Chase

FOSTER PC

 */s/ Howard W. Foster*
Howard W. Foster

*Attorneys for Plaintiffs*

## CERTIFICATE OF SERVICE

I, Kenneth E. Chase, hereby certify that I served the foregoing via the CM/ECF system on September 18, 2024, which automatically sends notice of an electronic filing to all counsel and registered users of record.

By: */s/ Kenneth E. Chase*
   Kenneth E. Chase